In re LEWISON BROTHERS,
A Partnership, Debtors.

LEWISON BROTHERS, a Partnership,
and J.E. Paul Lewison, Plaintiffs,

v.

WASHINGTON SAVINGS BANK, a New
Jersey Corporation, Defendants.

Bankruptcy No. 89–06893.
Adv. No. 90–2041.

United States Bankruptcy Court,
D. New Jersey.

April 29, 1993.

Wolff & Samson, P.A., P.C. by Robert E. Neis, Esq., Roseland, NJ, for Washington Sav. Bank.

Ressler & Ressler by Bruce J. Ressler, New York City, for debtors.

## OPINION

ROSEMARY GAMBARDELLA, Bankruptcy Judge.

Before this Court is the Motion of the Defendant Washington Savings Bank ("Washington") for Summary Judgment to Dismiss the Amended Complaint of the Debtors, Lewison Brothers, a partnership (the "Partnership") and J.E. Paul Lewison ("Paul Lewison") and Wendy Lewison. The following constitutes this Court's findings of fact and conclusions of law.

## FACTS

On August 31, 1989, the Partnership filed a voluntary petition under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of New Jersey. Paul Lewison is a general partner of Lewison Brothers. On July 9, 1991 Paul Lewison and Wendy Lewison filed a joint voluntary petition under Chapter 11 of the Bankruptcy Code. On January 19, 1990, the Debtors filed the instant adversary proceedings against Washington.

On June 17, 1988, the Partnership mortgaged real property located at 125 Monitor Street, Jersey City, New Jersey (the "Property") to Washington. *See* Affidavit of Robert E. Nies in Support of Motion to Dismiss Complaint of Lewison Brothers and J.E. Paul Lewison to Avoid Certain Property Liens Against the Debtors' Property and for Damages, filed February 1, 1993, Exhibit A (hereinafter "Nies cert."). The Partnership subsequently defaulted on its $2,500,000.00 obligation to Washington, and, on or about September 8, 1988, Washington commenced a foreclosure action against the Property (the "State Court Action"). *See* Nies cert., Exhibit A. The defendants in this action were the Partnership and Paul Lewison.

On or about September 28, 1988, the foreclosure complaint was amended to add additional defendants. The Partnership and Paul Lewison filed an answer on November 1, 1988. *See* Nies cert., Exhibit B. The Answer was stricken for failure to plead a valid defense. *See* Nies cert., Exhibit C. The Partnership and Paul Lewison, however, did not request leave at that time to file an Amended Answer. Therefore, a judgment of foreclosure was entered by the Clerk of the Superior Court of New Jersey on February 8, 1989 (the "Final Judgment"). *See* Nies cert., Exhibit D. The Final Judgment ordered that the Property be sold to satisfy the fixed amount owed to Washington of $2,763,-024.70, plus interest at 9.75% and attorneys' fees.

On March 2, 1989, the Partnership and Paul Lewison filed a motion in Superior Court seeking to vacate the Final Judgment and for permission to file out of time an amended answer and counterclaim. *See* Nies cert., Exhibit E. The counterclaim alleged the same causes of action as the Amended Complaint filed in this Court. *Id.*

The state trial court scheduled the Partnership's and Paul Lewison's State Court Motion for a hearing on March 17, 1989, at which time their counsel moved for an adjournment. *See* Nies cert., Exhibit F. The adjournment request was denied. *Id.* On March 23, 1989, the Partnership and Paul Lewison filed a Notice of Appeal of the trial court's February 8, 1989 Final Judgment. *See* Nies cert., Exhibit G. Thus, in early 1989, the Partnership and Paul Lewison had pending in the State Court Action (1) an appeal of the Final Judgment and (2) a motion for leave to file an amended answer and counterclaim which asserted certain allegations and claims identical to those asserted in the Amended Complaint now pending before this court.

Upon learning of the pending appeal, the trial court stayed the State Court Motion until the Appellate Division ruled on the Appeal. *See* Nies cert., Exhibit F. The Partnership and Paul Lewison, in turn, successfully moved before the Appellate Court for partial remand to allow the trial court to decide in the first instance the issues raised by the State Court Motion which, if successful for the Partnership and Paul Lewison, would result in the Final Judgment being vacated and the appeal being rendered moot. *See* Nies aff., Exhibit H. Apparently the Partnership and Paul Lewison did not thereafter pursue the State Court Motion in their parallel challenge to the Appellate Division of Washington's Final Judgment. On February 6, 1990, the Appellate Division of the Superior Court of New Jersey, *sua sponte*, ordered the appeal of the Final Judgment dismissed without prejudice pending the completion of the bankruptcy proceedings. *See* Nies cert., Exhibit I.

Washington then moved for and obtained a Writ of Execution. The Writ was delivered to the Sheriff of Hudson County with instruction to levy upon and sell the Property. Under *N.J.S.A.* § 2A:17–36, the Partnership twice adjourned the foreclosure sale. A final sale was scheduled August 31, 1989. On that

date, however, the Partnership filed a petition for reorganization under Chapter 11 of the Bankruptcy Code which stayed the foreclosure sale.

The automatic stay was lifted as to the Property on July 25, 1991, by order of the late Bankruptcy Judge Daniel J. Moore, of this court. Washington thereafter moved in the State Court Action for and obtained another Writ of Execution which was delivered to the Sheriff of Hudson County for levy and sale of the Property.

The Partnership and Paul Lewison once again attempted to stop the sale by filing in the Superior Court of New Jersey a Motion for Adjournment of the Sheriff's Sale and for Other Relief. This motion for an adjournment was denied on September 13, 1991, by the Honorable Robert F. Tarlton, P.J.Ch. See Nies cert., Exhibit J. The Property was subsequently sold at public auction, where Washington was a successful bidder. As a result of the Sheriff sale, Washington now asserts that it holds a contingent, unliquidated claim against Paul Lewison and the Partnership of approximately $2.9 million.

As of this date, no plan of reorganization has been confirmed and the debtors have not been discharged in either the Partnership's bankruptcy or in Paul and Wendy Lewison's personal bankruptcy. The Lewison Brothers proceeding was converted to a Chapter 7 case by order dated March 12, 1992 and Jonathan M. Kohn, Esq. had been appointed Chapter 7 trustee by the United States Trustee.[1]

Paul Lewison alleges that he and the Partnership were unaware of Washington's alleged misconduct until after the foreclosure action commenced. Moreover, Paul Lewison alleges that Washington's misconduct continued up to and after the date the Debtors filed petitions in bankruptcy. See Affidavit of J.E. Paul Lewison in Opposition to Defendant's Motion to Dismiss Debtors' Amended Complaint, filed March 3, 1993, paras. 4–5 (hereinafter "Lewison Aff.").

Although Paul Lewison asserts that Washington's misconduct continued up to and after August 31, 1989, when the debtors filed the petition in bankruptcy, these allegations of misconduct are not set forth in the Amended Complaint. First, the Amended Complaint in the instant proceeding is nearly identical of the March 2, 1989 affidavit ("State Court Affidavit"), that Paul Lewison submitted in the State Court foreclosure action in support of his motion to vacate the foreclosure judgment and for leave to file an amended complaint. Paul Lewison and the Partnership have failed in the amended complaint before this Court to allege any new material facts, not alleged in the State Court Action. The only new allegations in the amended complaint which differ at all from the State Court affidavit of March 2, 1989 in Support of Lewison Brothers and Paul Lewison's Motion to Vacate the foreclosure judgment and for leave to file an amended complaint are as follows:

1. [para. 26]. Upon information and belief in March and/or April of 1989 defendant Washington Savings Bank agreed to sell the aforesaid property to Joseph Goldburd and/or entities controlled by him, and pursuant thereto Goldburd paid in deposit to defendant Washington Savings Bank in the sum of $100,000.00.

2. [para. 29]. Adding Wendy Lewison to the complaint and request for relief.

However, in his affidavit, submitted to this court on March 3, 1993, Paul Lewison does assert that actionable conduct occurred postpetition. See Lewison Aff., paras. 6 and 7. These allegations are not contained in the Amended Complaint and were brought to the attention of this court approximately three working days before the hearing on this motion.

The Partnership and Paul Lewison argue that Washington's res judicata defense must fail because there is no identity of claims between the State Court foreclosure action and the present lender liability action. The Debtors also assert that due to ongoing conduct by Washington, the lender liability

---

**1.** By order dated April 14, 1993 this Court has directed the appointment of a Chapter 11 Trustee in the case of Paul and Wendy Lewison.

claims could not have been litigated in the prior proceeding in State Court.

Through the Amended Complaint, Paul Lewison and the Partnership argue that they do not challenge the State Court foreclosure judgment, but rather, assert lender liability claims arising from Washington's conduct after making the loan.

Washington, however, argues that the lender liability claims alleged by Paul Lewison and the Partnership in their Amended Complaint could have and should have been litigated in the State Court action which resulted in a Final Judgment in Washington's favor. Further, Washington alleges that Paul Lewison and the Partnership abandoned their efforts in State Court to challenge Washington's final judgment and, instead, strategically elected to file in this forum. Thus, Washington argues that, because the allegations of the Amended Complaint are nearly identical to those that the debtors abandoned in their State Court action, the doctrines of res judicata and collateral estoppel and the Entire Controversy Doctrine does not permit the relitigation of these issues. Thus, Washington moves for summary judgment granting dismissal of the Amended Complaint. Moreover, Washington requests that this court find that Wendy and Paul Lewison do not have standing in this action.

### DISCUSSION

■ Summary Judgment is appropriate only when there is no genuine issue as to any material fact and when the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The party moving for summary judgment has the burden of establishing the nonexistence of any "genuine issues of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Fairbanks Morse & Co. v. Consolidated Fisheries Co.,* 190 F.2d 817, 824 (3d Cir.1951). Where the nonmoving

party bears the ultimate burden of persuasion on a dispositive issue at trial, the non-moving party must "go beyond the pleadings" and, by way of affidavits, depositions, answers to interrogatories, or admissions on file "designate specific facts showing that there is a genuine issue for trial." *Celotex,* 477 U.S. at 407, 106 S.Ct. at 2553. The evidence which the nonmoving party produces to show the existence of a genuine issue must be of sufficient quantum and quality to allow a rational and fair minded fact finder to return a verdict in favor of the nonmovant, bearing in mind the applicable standard of proof that would apply at the trial on the merits. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).[2]

■ The Court must resolve all factual disputes, all doubts as to the existence of genuine issues of material fact, and any inferences that may be drawn from underlying facts against the moving party. *See Chirinos de Alvarez v. Creole Petroleum Corp.,* 613 F.2d 1240, 1244 (3d Cir.1980); *In re Windsor Communications Group, Inc.,* 68 B.R. 1007, 1010 (E.D.Pa.1986). The purpose of summary judgment is to avoid a trial which is unnecessary and results in delay and expense, by promptly disposing of any actions in which there is no genuine issue of material fact. *Tomalewski v. State Farm Life Ins. Co.,* 494 F.2d 882, 884 (3d Cir.1974). Summary judgment is a "drastic remedy" which is not to be granted liberally. *Id.* (cited with approval in *Ness v. Marshall,* 660 F.2d 517, 519 (3d Cir.1981)). Furthermore, some courts have found that "[s]ummary judgment is notoriously inappropriate for determination of claims in which issues of intent, good faith and other subjective feelings play dominant roles." *In re Coordinated Pretrial Proceedings in Antibiotic Antitrust Actions,* 538 F.2d 180, 185 (8th Cir.1976) (citations omitted), *cert. denied,* 429 U.S. 1040, 97 S.Ct. 738, 50 L.Ed.2d 751 (1977).

2. The Court of Appeals for the Third Circuit has held that the nonmovant may defend a motion for summary judgment upon a lesser standard of proof, stating "[i]f ... there is any evidence in the record from *any* source from which a reasonable inference in the [nonmoving party's] favor may be drawn, the moving party simply cannot obtain a summary judgment...." *In re Japanese Elect. Prod. Antitrust Litigation,* 807 F.2d 44 (3d Cir.1985), *cert. denied sub nom. Zenith Radio Corp. v. Matsushita Elect. Indus. Co.,* 481 U.S. 1029, 107 S.Ct. 1955, 95 L.Ed.2d 527 (1987) (emphasis added).

Some courts have held that whenever there is even the "slightest doubt" regarding the facts of a case, summary judgment may not be granted. *Tomalewski*, 494 F.2d at 884.

## I. STANDING

Washington questions whether Paul and Wendy Lewison are both proper parties to the Amended Complaint, and if so, on what basis.

Washington argues that, in the Debtors' Statement of Financial Affairs, filed in support of their joint bankruptcy petition, the Lewisons failed to identify as an asset, any claim, counterclaim or cause of action that they have against Washington. Washington argues that the Lewisons, therefore, are judicially estopped from now asserting that they personally have any claims against Washington. In support of this argument, Washington cites *Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414, 417 (3d Cir. 1988), *cert. denied*, 488 U.S. 967, 109 S.Ct. 495, 102 L.Ed.2d 532 (1988) ("failure to disclose such claims [likely to arise after a Chapter 11 proceeding] triggers applications of the doctrine of equitable estoppel, operating against a subsequent attempt to prosecute the actions.").

Washington also argues that, under New Jersey law, which recognizes the entity theory of partnerships, the Partnership on its own may pursue any liability claims against Washington, its lender. *Schultz v. Ziegenfuss*, 105 N.J.Super. 468, 471, 253 A.2d 180 (App.Div.1969) (noting that the separate jural entity of a partnership to maintain a course of action on its own, separate from and without its partners).

Washington also argues that if this court finds that Paul Lewison, as the general partner of the Partnership, convinces this court that he has standing to assert these lender liability claims and is not estopped from raising them, that he is nonetheless barred by res judicata because he was a party to the State Court Action. *See* Nies cert., Exhibit A.

Washington also argues, regarding Wendy Lewison, that she has no direct interests in the Property or in the Partnership. First, that Wendy Lewison was not an original party to this action. Moreover, that leave has not been granted by this court to include her as a party. Finally, Washington argues that Wendy Lewison is also barred by res judicata because of the close identity of her interests with those of her husband, Paul Lewison. In addressing this very issue, the Court of Appeals for the Fifth Circuit held:

> [i]t is well-settled that, under certain circumstances, a judgment may bar a subsequent action by a person who is not a party to the original litigation. For example, where the non-party's interests are adequately represented by a party to the prior action, we have concluded that there is sufficient identity between the parties to apply the principles of res judicata and give preclusive affect to the prior judgment. A non-party, such as [a spouse], is adequately represented where a party in the prior suit is so closely aligned to her interests as to be her virtual representative. This requires more than a showing of parallel interests—it is not enough that the non-party may be interested in the same questions or proving the same facts. Here, the interests at stake could not be more closely aligned. [The partner's spouse] purchased no interest in the partnership, and she had no legal relationship with either of the banks. The claims she asserts derive exclusively from claims asserted by her husband. Thus, under the circumstances, we conclude that the district court properly found that there were sufficient identity of parties to apply principles of res judicata to [the partner's spouse's] claims.

*Eubanks v. FDIC*, 977 F.2d 166, 170 (5th Cir.1992) (holding that district court properly found that there was sufficient identity of parties to apply principles of res judicata to debtor's wife's claims) (citations omitted) (footnote omitted).

Washington argues that all of the claims asserted in the Adversary Complaint stem from a lending relationship between Washington and the Partnership and that Paul and Wendy Lewison, therefore, lack standing to assert those claims, and for that reason alone should be barred from proceeding. Wash-

ington also argues that the Partnership, Paul Lewison, and Wendy Lewison are all barred from asserting the claims in the Amended Complaint against Washington by the doctrine of res judicata.

## A. THE DEBTORS ARGUE THAT THE JOINDER OF PLAINTIFFS-DEBTORS PAUL AND WENDY LEWISON IN THIS PROCEEDING WAS PREVIOUSLY GRANTED BY THIS COURT.

The Debtors argue that the motion for joinder of Paul and Wendy Lewison was presented to Bankruptcy Judge Novalyn Winfield on October 5, 1992, along with the subject Amended Complaint. In open court, the Debtors assert that then counsel for Washington, Michael Ackerman, Esq. consented to the joinder. Thus, the debtors conclude that Washington's objection to such relief at this point is too late. In regard to the standing of Wendy Lewison as a plaintiff, the Debtors assert that the same conduct that drove Paul Lewison into bankruptcy did the same as to his wife, Wendy. No order is docketed in this case allowing for the joinder of the Lewisons or the filing of the amended complaint. This Court, for the purposes of this motion however, will first address the claims set forth in the amended complaint.

## II. RES JUDICATA

■■■ Res judicata applies where a judgment in a prior proceeding involving the same parties or their privies, and relating to the same subject matter, has determined the dispute on its merits. *Central R.R. Co. v. Neeld*, 26 N.J. 172, 139 A.2d 110 (1958), *cert. denied*, 357 U.S. 928, 78 S.Ct. 1373, 2 L.Ed.2d 1371 (1958). Res judicata is designed to preclude the relitigation of issues which have been fairly and finally determined. *Id.* at 177, 139 A.2d 110; *see also Montana v. United States*, 440 U.S. 147, 153, 99 S.Ct. 970, 973, 59 L.Ed.2d 210 (1979); *In re Gibbs*, 107 B.R. 492, 496 (Bankr.D.N.J. 1989) (quoting *Brown v. Felsen*, 442 U.S. 127, 131, 99 S.Ct. 2205, 2209, 60 L.Ed.2d 767 (1979)).

■■■ The normal rules of res judicata and collateral estoppel apply in Bankruptcy Court. *Katchen v. Landy*, 382 U.S. 323, 334, 86 S.Ct. 467, 475, 15 L.Ed.2d 391 (1966). Moreover, the Court of Appeals for the Fifth Circuit has found that:

> the numerous and substantial reasons for the doctrine of *res judicata* are ... all the more compelling today, especially for bankruptcy, and related proceedings. Because of spiraling litigation costs, increasingly congested courts—especially bankruptcy courts—and expanding theories of recovery, such as lender liability, it is more imperative than ever that the doctrine of *res judicata* be applied with unceasing vigilance.

*In the Matter of Baudoin*, 981 F.2d 736, 740 (5th Cir.1993).

■■■ Application of res judicata requires: (1) a final judgment on the merits in a prior suit; (2) involving the same parties or their privies; and (3) a subsequent suit based on the same causes of action. *Purter v. Heckler*, 771 F.2d 682, 690 (3d Cir.1985); *United States v. Athlone Industries, Inc.*, 746 F.2d 977, 983 (3d Cir.1984); *Goel v. Heller*, 667 F.Supp. 144, 149–150 (D.N.J.1987).

■■■ In *Athlone Industries*, the Court of Appeals for the Third Circuit indicated a predisposition toward taking a broad view of what constitutes identity of causes of action—"an essential similarity of the underlying events giving rise to the various legal claims." *Id.* at 984. In reviewing whether the suits involve the same causes of action, a court should consider: (1) whether the acts complained of and the demand for relief are the same (that is, whether the wrong for which redress is sought is the same in both actions); (2) whether the theory of recovery is the same; (3) whether the witnesses and documents necessary at trial are the same (that is, whether the same evidence necessary to maintain the second action would have been sufficient to support the first); and (4) whether the material facts alleged are the same. *Id.* at 984.

### A. WASHINGTON'S ARGUMENTS

Washington argues that the lender liability claims of fraud and breach of contract alleged in the Amended Complaint are the

defenses and counterclaims which the debtors could and should have pursued in state court and that as such, the Partnership and Paul Lewison should be barred from relitigation at this point.

Washington argues that the judgment entered by the Superior Court of New Jersey in the State Court Action in favor of Washington was a final judgment, that it has never been vacated or reversed, that the New Jersey Appellate Court dismissed the Partnership's and Paul Lewison's appeal of the foreclosure judgment, but did not in any way vacate or modify the judgment. Washington further argues that the Amended Complaint now seeks to void Washington's mortgage, and to award damages, based on allegations of lender liability that these allegations are identical to the allegations and claims the Partnership and Paul Lewison tried to assert—and then abandoned—in the Superior Court of New Jersey. Thus, Washington concludes that, under the principles of res judicata the plaintiffs' Amended Complaint must be dismissed.

## B. *DEBTORS' ARGUMENT THAT BANKRUPTCY COURT HAS JURISDICTION TO DETERMINE THE DEBTORS' LENDER LIABILITY CLAIMS NOT WITHSTANDING THE PRIOR STATE COURT FORECLOSURE JUDGMENT.*

The Debtors argue that there is a long established rule of law that a prior State Court judgment will not preclude the bankruptcy court from exercising its exclusive jurisdiction to effectuate the purposes of the Bankruptcy Code—including allowing or disallowing claims, collecting assets of the estate, and subordinating or rejecting claims against the debtor according to the equities of the case. *Brown v. Felsen*, 442 U.S. 127, 137, 99 S.Ct. 2205, 2212, 60 L.Ed.2d 767 (1979); *Pepper v. Litton*, 308 U.S. 295, 303–306, 60 S.Ct. 238, 244–45, 84 L.Ed. 281 (1939). The Debtors argue that the instant lender liability complaint against Washington places these matters squarely in issue.

In *Brown v. Felsen*, decided under the Bankruptcy Act, the United States Supreme Court held that, even though the creditor's claims of fraud could have been litigated in the prior state court action against the debtor, the judgment in the prior state court action did not preclude the creditor from litigating the claim of fraud in the bankruptcy court, as it was determinative of the dischargeability of the debt in question. The Supreme Court cautioned that, particularly in bankruptcy proceedings, res judicata is not to be applied mechanically, but only after a careful inquiry by the bankruptcy court into whether invoking res judicata would prevent it from considering matters within its exclusive jurisdiction:

> Because res judicata may govern grounds and defenses not previously litigated, however, it blockades unexplored paths that may lead to truth. For the sake of repose, res judicata shields the fraud and the cheat as well as the honest person. It therefore is to be invoked only after careful inquiry.

*Brown*, 442 U.S. at 132, 99 S.Ct. at 2210.

In *Brown*, the creditor, against whom res judicata was sought to be asserted, conceded that the prior judgment was binding and did not contest its validity. *Id.* The Supreme Court held that the bankruptcy court was not confined to a review of the judgment and record in the prior State Court proceeding when considering the dischargeability of a debt, and so may consider evidence extrinsic to the judgment in determining dischargeability, a matter within its exclusive jurisdiction. *Id.*, 442 U.S. at 127, 136, 138, 99 S.Ct. at 2207, 2212, 2213.

The Debtors argue that this case is analogous to the instant case because the debtors do not attack the prior judgment, but rather, assert matters which fall within the bankruptcy court's exclusive jurisdiction.

However, the debtors fail to articulate those issues raised in this action which fall within the bankruptcy court's exclusive jurisdiction. This matter distinguished from *Brown* does not involve traditional bankruptcy issues such as nondischargeability.

The Debtors also rely on *Pepper v. Litton*, in which the court found:

> Courts of bankruptcy are constituted by §§ 1 and 2 of the bankruptcy act 30 Stat. 544, 11 U.S.C.A. §§ 1(8) 11, and by the

latter section are invested "with such jurisdiction at law and in equity as will enable them to exercise original jurisdiction in bankruptcy proceeding." Consequently this Court has held that for many purposes "courts of bankruptcy are essentially courts of equity, and their proceedings inherently proceedings in equity". By virtue of § 2 a bankruptcy court is a court of equity at lest in the sense that in the exercise of a jurisdiction conferred upon it by the act, it applies the principles and rules of equity jurisdiction. Among the granted powers are the allowance and disallowance of claims; the collection and distribution of the estates of bankrupts and the determination of controversies in relation thereto; the rejection in whole or in part "according to the equities of the case" of claims previously allowed; and the entering of such judgments "as may be necessary for the enforcement of the provisions" of the act. In such respects the jurisdiction of the bankruptcy court is exclusive of all other courts.

*Pepper*, 308 U.S. at 304, 60 S.Ct. at 244 (citations omitted) (footnotes omitted).

Thus, the court held that, "a bankruptcy court has full power to inquire into the validity of any claim asserted against the estate and to disallow it if it is ascertained to be without lawful existence" and "the mere fact that a claim has been reduced to judgment does not prevent such an inquiry." *Id.*, 308 U.S. at 305, 60 S.Ct. at 244; *see also Margolis v. Nazareth Fair Grounds & Farmers Market, Inc.*, 249 F.2d 221, 223 (2d Cir.1957) (the bankruptcy court was not bound by the prior judgment of a state court because a bankruptcy court "may inquire into the validity of any claim asserted against the bankrupt and may disallow it if is found to be without lawful existence").

The Debtors argue that courts in this circuit are in accord that preclusion doctrines do not oust the bankruptcy court of its exclusive jurisdiction under the Bankruptcy Code. *See In re Ross*, 602 F.2d 604, 606 (3d Cir. 1979) (the bankruptcy court may review the entire record of the earlier action to determine whether the factual record supports the application of collateral estoppel); *In re*

*McMillan*, 579 F.2d 289, 292–93 (3d Cir.1978) (concluding that "because the bankrupts did not actually litigate the [case], nor even the facts which were necessary to that judgment can collaterally estop them from relitigating the same issues in the bankruptcy case."); *Purter v. Heckler*, 771 F.2d 682, 690 (3d Cir.1985) (noting the "dangers of a wooden application" of res judicata and that "the ease and efficiency of *res judicata* as a means of quickly avoiding evaluation of the merits of a plaintiff's claim does not imply that the decision to apply the doctrine should be either facile or hasty").

The debtors also rely on *In re Graham*, 131 B.R. 275, 278 (E.D.Pa.1991), *aff'd in pertinent part and vacated on other grounds*, 973 F.2d 1089, 1095–98 (3d Cir.1992). In *Graham*, the District Court held that res judicata did not apply in the nondischargeability proceeding in the bankruptcy case, even if the debtor could have litigated the issue of fraud in the prepetition proceeding. *Id.* at 278–79.

In *Graham*, the District Court found that "it would be inconsistent with the 'freshstart' policy of the Bankruptcy Code to permit a pre-bankruptcy proceeding in the tax court in which a debtor could have contested the issue of 'fraud' but for whatever reason did not, to foreclose that debtor from actually litigating the fraud issue in the bankruptcy court for the purpose of determining the dischargeability of tax liabilities." *Id.* at 279.

The Debtors argue that, in affirming *Graham*, the Court of Appeals for the Third Circuit expressly held that *Brown* controls a subsequent proceeding in bankruptcy court no matter whether it is the debtor or the creditor which seeks to invoke claim preclusion and that the Third Circuit thus reaffirmed that a prior State Court judgment will not be given preclusive effect in a bankruptcy proceeding when it would deprive the bankruptcy court of its exclusive jurisdiction over issues such as dischargeability, or would otherwise interfere with the federal bankruptcy scheme. *Graham*, 973 F.2d at 1094–95; *see also In re Johnson*, 323 F.2d 574, 578 (3d Cir.1963) (since the Act is specific as to nondischargeability debts, it was permissible, ever necessary in the circumstances, for the

bankruptcy court to inquire into the nature of the liability which has been reduced to judgment in order to determine whether it falls within the act.).

The Debtors argue that, in the instant case their lender liability claim seeks money damages from Washington is based upon a course of conduct by Washington that began when the mortgage loan was made and continued through and after the date when the Debtors filed their respective bankruptcy petitions. Thus, they conclude that this is a claim which the bankruptcy court should entertain by virtue of its mandate to collect property of the estate. *See, Pepper,* 308 U.S. at 304, 60 S.Ct. at 244. Similarly, the Debtors argue that it is exclusively within the province of the bankruptcy court to consider whether Washington's conduct, as alleged in the Amended Complaint, warrant the subordination or rejection of its contingent, unliquidated claim against the Debtors for the $2.9 million deficiency resulting from the sale of the property at foreclosure.

Again, this court notes that the Debtors asserted these claims of lender liability in the State Court Action. Moreover, these issues are not within the "exclusive provence" of this court. The Debtors' assertions that Washington's "conduct" continued after the date of the filing of the bankruptcy petition are not found in the Amended Complaint. All of the factual allegations asserted by the Debtors in the Amended Complaint are substantially identical to the allegations asserted in the State Court Action.

The Debtors also argue that the lender liability claims, such as those asserted in the present amended complaint fall squarely within the jurisdiction of a bankruptcy court which is supervising the Debtors' affairs as demonstrated by cases cited by Washington. For example, in *Baudoin,* the lender liability complaint filed in State Court, allege that the lending bank breached its loan agreement with the debtors (both individual and corporate) and (like Washington here) forced the individual debtors and their corporation into bankruptcy. The bank then sued in federal court to enjoin the lender liability action. The bankruptcy court, to which the bank's suit was transferred, granted summary judg-

ment for the debtors on the ground that the lender liability claim was not a "core" matter and could not have been pursued earlier in the debtor's prior bankruptcy proceedings. The district court affirmed the bankruptcy court's ruling. The Court of Appeals for the Fifth Circuit, however, reversed this particular finding. The Fifth Circuit held that the debtors' lender liability claims fell squarely within the provision of 28 U.S.C. § 157(b)(2) and, as such, would have been a "core" proceeding in both the corporate and personal bankruptcies.

In explaining its reasoning concerning the jurisdiction of the bankruptcy, the Court of Appeals for the Fifth Circuit relied on *Matter of Wood,* 825 F.2d 90, 92 (5th Cir.1987):

> Congress was concerned with the inefficiencies of piece-meal adjudication of matters affecting the administration of bankruptcies and intended to give federal courts to adjudicate all matters having an affect on the bankruptcy. Courts have recognize that the grant of jurisdiction under the 1978 Act was broad.

The *Baudoin* Court then found:

> Indeed, pursuant to 28 U.S.C. § 157, bankruptcy jurisdiction exists if the matter is simply "related to" the bankruptcy—if "the outcome of that proceeding could *conceivably* have any effect on the estate being administered in bankruptcy". *Matter of Wood,* 825 F.2d at 93 (quoting *Pacor, Inc. v. Higgins,* 743 F.2d 984, 994 (3d Cir. 1984)), (emphasis added by *Wood* Court). It cannot be reasonably argued that a $4,000,000.00 claim belonging to a bankruptcy estate could not have any conceivable effect on that estate. In short, the bankruptcy court had jurisdiction to hear the lender liability claim.

.  .  .  .  .

> While we recognize that § 157(b)(2)(O) is to be narrowly construed, we are confident that the Baudoin's claim is precisely the type which fits within the catch-all provision's narrow ambit. It would "affect [ ] the liquidation of the assets of the estate or the adjustment of the debtor-creditor . . . relationship" tremendously. *See In re Branding Iron Motel,* 798 F.2d 396, 399 n.

3 (10th Cir.1986) (noting that a controversy over a note and mortgage is "inextricably tied to the bankruptcy proceeding because it affects the liquidation of assets" and is, therefore, core).

*Baudoin,* 981 F.2d at 740–42 (footnotes omitted).

Similarly, the Debtors rely on *Sure–Snap Corp. v. State Street Bank & Trust Co.,* 948 F.2d 869 (2d Cir.1991) in which the court held that the debtors' lender liability claims could and should have been brought in the debtor's bankruptcy proceedings—so that the order confirming the debtors plan of reorganization was *res judicata* to preclude lender liability claims that could have been brought before the plan was confirmed.

The Debtors argue that in *Baudoin* and *Sure–Snap,* the lender liability actions in those cases were brought after plans of reorganization had been confirmed or the debtors had been discharged by the bankruptcy court. *See Baudoin,* 981 F.2d at 738; *Sure–Snap,* 948 F.2d at 871.

The Debtors argue that the situations in those two cases are not analogous to the instant case. Here, no plan of reorganization has been confirmed, the Debtors have not been discharged, and the debtors' lender liability claim is now actually pending in the bankruptcy court. The Debtors argue that Washington fails to note that the court barred such claims in *Baudoin* and *Sure–Snap* precisely because they could and should have brought in the bankruptcy court, but before plan of reorganization had been confirmed or before the debtors were discharged.

■ Finally, the Debtors argue that it is clear from the history the State Court Action that the issues raised by the debtors' lender liability claims were not actually litigated in the prior State Court Foreclosure Action. Thus, the debtors conclude that the defense of collateral estoppel, or issue preclusion, is no more available to Washington than is the defense of res judicata. As the Supreme Court noted in *Brown,* collateral estoppel may bar the relitigation in bankruptcy court of matters "actually and necessarily decided" in a prior action. *Brown,* 99 S.Ct. at 139 n. 10.

The Debtors argue that in the case at bar, the issues involved in the debtors' lender liability claim were never litigated in the prior action, as the debtors filed their bankruptcy petitions before the lender liability claim could be determined by the State Court. *See, e.g.,* Nies cert., Exhs. F and H; *See also Graham,* 973 F.2d at 1098 (as no factual finding had been made, the issue of fraud was not actually litigated in the prior proceedings, and the collateral estoppel therefore did not apply); *In re McMillan,* 579 F.2d at 292 (because the bankrupts did not actually litigate the issues the creditor's claims against them in the prior action, which resulted in a default judgment, they were not collaterally estopped from relitigating those issues in the bankruptcy court).

### III. ENTIRE CONTROVERSY DOCTRINE

■ In the alternative, Washington argues that the Partnership and Paul Lewison are also precluded under New Jersey's entire controversy doctrine. The entire controversy doctrine holds that all claims emanating from a transaction, or a related series of transactions, must be joined in a single proceeding. *See Crispin v. Volkswagenwerk, A.G.,* 96 N.J. 336, 343–344, 476 A.2d 250 (1984).

■ Beginning in 1979, the entire controversy doctrine was codified in the New Jersey Court rules. At the time of the subject foreclosure judgment, Rule 4:27–1(b) provided:

(b) *Mandatory Joinder.*

Each party to an action must assert therein all claims which he may have against any other party thereto insofar as may be required by application of the entire controversy doctrine.

The consequence of failure to join a related claim in the original action is forfeiture of the claim. The entire controversy doctrine "requires that a party litigate all aspects of a controversy in a single legal proceeding.... Under this doctrine the 'entire controversy' rather than its constituent causes of action is

the unit of litigation and joinder of all such causes of action is compulsory under penalty of forfeiture." *Mori v. Hartz Mountain Dev. Corp.*, 193 N.J.Super. 47, 52–53, 472 A.2d 150 (App.Div.1983). Dismissal is appropriate even though the claim was omitted from the original complaint through inadvertence rather than for tactical reasons. *Malaker Corp. Stockholders Protective Committee v. First Jersey Nat'l Bank*, 163 N.J.Super. 463, 500, 395 A.2d 222 (App.Div.1978), *cert. denied*, 79 N.J. 488, 401 A.2d 243 (1979). The doctrine may also be applied against a party who defaults in the first proceeding. *Mori*, 193 N.J.Super. at 55–56, 395 A.2d 222.

■ To determine whether application of the entire controversy doctrine is appropriate, the court must ascertain whether omission of the claim would result in subsequent litigation. *Wm. Blanchard Co. v. Beach Concrete Co.*, 150 N.J.Super. 277, 293–294, 375 A.2d 675 (App.Div.), *cert. denied*, 75 N.J. 528, 384 A.2d 507 (1977). In *Blanchard*, the court noted that:

[a]n evaluation must be made of each potential component of a particular controversy to determine the likely consequences of the omission of that component from the action and its reservation for litigation another day. If those consequences are likely to mean that the litigants in the action as framed will, after final judgment therein is entered, be likely to have to engage in additional litigation in order to conclusively dispose of their respective bundles of rights and liabilities which derive from a single transaction or related series of transactions, then the omitted component must be regarded as constituting an element of the minimum mandatory unit of litigation. This result must obtain whether or not that component constitutes either an independent cause of action by technical common law definition of an independent claim which, in abstract, is separately adjudicable.

*Id.* at 293–4.

■ However, "the doctrine may be somewhat limited in foreclosure actions as only 'germane' counterclaims may be presented therein." *Joan Ryno, Inc. v. First*

*Nat'l Bank*, 208 N.J.Super. 562, 506 A.2d 762 (App.Div.1986).

This limitation stems from R. 4:7–1 which provides:

*Mandatory or Permissive Counterclaims*

Except as otherwise provided by R. 4:67–4 (summary actions) and except in foreclosure actions (in which only germane counterclaims may be pleaded), a pleading may state as a counterclaim any claim against the opposing party whether or not arising out of the transaction or occurrence that is the subject matter of the opposing party's claim. A defendant, however, either failing to comply with R. 4:27–1(b) (mandatory joinder of claims) or failing to set off a liquidated debt or demand or a debt or demand capable of being ascertained by calculation, shall thereafter be precluded from bringing any action for such claim or for such debt or demand which might have been so set off.

R. 4:7–1.

Effective September 1, 1992, Rule 4:64–5 was adopted "for the purpose of defining germane and non-germane claims in foreclosure actions." *See* Comment to Rule 4:64–5.

Rule 4:64–5 provides:

### 4:64–5. Joinder of claims in Foreclosure

Unless the court otherwise orders on notice and for good cause shown, claims for foreclosure of mortgages shall not be joined with non-germane claims against the mortgagor or other persons liable on the debt. Only germane counterclaims and cross-claims may be pleaded in foreclosure actions without leave of court. Non-germane claims shall include, but not be limited to, claims on the instrument of obligation evidencing the mortgage debt, assumption agreements and guarantees. A defendant who chooses to contest the validity, priority or amount of any alleged prior encumbrance shall do so by filing a cross-claim against that encumbrancer, if a co-defendant, and the issues raised by the cross-claim shall be determined upon application for surplus money pursuant to R. 4:64–3, unless the court otherwise directs.

Although 4:64–5 does not apply to the instant case, it does give this court some guidance in defining the term "germane" in deciding the instant case.

The term "germane" was defined in *Leisure Technology–Northeast, Inc. v. Klingbeil Holding Co.*, 137 N.J.Super. 353, 358, 349 A.2d 96 (App.Div.1975). "The use of the word 'germane' in the language of the Rule undoubtedly was intended to limit counterclaims in foreclosure actions to claims arising out of the mortgage transaction which is the subject matter of the foreclosure action." *Id.*

In *Ryno*, the debtor-plaintiff sued the creditor-defendant for losses due to a foreclosure proceeding. The debtor had purchased a large plot of land which he had subdivided. The debtor intended to build two houses, one as a personal home for its officers and one to resell. The debtor received a commitment from the creditor for a loan to build the personal residence. Some months later, the creditor also issued a $50,000.00 commitment for a loan to build the resale home.

The creditor ultimately refused to lend the debtor the money and the debtor was forced to find other financing. The debtor eventually defaulted on the personal residence loan, blaming the default on the creditor's breach of the loan commitment for the resale home.

After the conclusion of the foreclosure proceedings, wherein the creditor secured a final default judgment and a sheriff's sale was confirmed, the debtor sued the creditor for breach of contract. The debtor claimed that the breach of the commitment Agreement resulted in damages from the loss of the personal residence by foreclosure. The *Ryno* court held that the action was barred by the single controversy doctrine. *Ryno,* 208 N.J.Super. at 570, 506 A.2d 762. In so ruling, the *Ryno* court reasoned:

> While we have difficulty considering the breach of the commitment was germane in the foreclosure action, nevertheless under plaintiff's premise that the losses from the foreclosure are recoverable in this case, it was germane. Further, assuming that substantively plaintiff's damage claim is valid, it cannot be doubted but that if the breach of the commitment gave plaintiff a

defense to the foreclosure, then it was germane for that reason as well. Thus we conclude that if we are to accept plaintiff's legal claim that it may obtain substantive damages by reason of the foreclosure, it is barred by the single controversy doctrine from making the recovery. *Id.*

In *Leisure Technology*, the debtor-defendant, in an action to foreclose a mortgage, filed an answer and counterclaim alleging that the creditor-plaintiff had fraudulently and wrongfully acted subsequent to the execution of the debtor's mortgage. Debtor alleged that the creditor breached a contract which related to the development of parcels of land within a planned recreational community. The Court found that "the thrust of the counterclaim [was] the assertion that plaintiff had breached the underlying Agreement in relation to which the mortgage was executed and interfered with defendants' rights under that Agreement." *Leisure Technology,* 137 N.J.Super. at 358, 349 A.2d 96. The court held that "[i]n the usually understood sense of the word, these claims were germane to the foreclosure action. We are persuaded that the single controversy doctrine to which we have referred above requires a liberal rather than a narrow approach to the question of what issues are 'germane'." *Id.* Accordingly, the Appellate Division reversed the trial court's order striking the defendant's first affirmative defense and severing the counterclaim and transferring it to the Law Division.

■ In the instant case, the complaint requests, *inter alia,* disgorgement of funds and avoidance of liens based on allegations of lender liability. *See* Complaint, para. 26. Clearly, this complaint raises issues germane to the foreclosure action. The claim arises "out of the mortgage transaction which is the subject matter of the foreclosure action." *Leisure Technology,* 137 N.J.Super. at 358, 349 A.2d 96. Here, as is *Ryno,* the claims raised would have given the Partnership and Paul Lewison a defense to the foreclosure. Thus, the claims raised are germane and the Entire Controversy Doctrine does not permit the relitigation of these issues. *Ryno,* 208 N.J.Super. at 570, 506 A.2d 762.

## IV. COLLATERAL ESTOPPEL

This court will address the doctrine of collateral estoppel separately.

■ For a claim to be precluded under the doctrine of collateral estoppel,

the [Court of Appeals for the] Third Circuit has established a four-part test that must satisfied in order for issue preclusion to apply: (1) the issue sought to be precluded must be the same as that involved in the prior action; (2) that issue must have been actually litigated; (3) it must have been determined by a valid and final judgment; and (4) the determination must have been essential to the prior judgment.

*In re Graham,* 131 B.R. at 280 (citations omitted).

Washington argues that the issues involved in the Amended Complaint are the same issues raised in the State Court Action. Specifically, Washington alleges that (1) the issues involved in the instant case were actually litigated for purposes of collateral estoppel, (2) there was a final and valid judgment entered in the State Court Action and, finally, (3) the determination of issues raised by the Amended Complaint was essential to give validity to the foreclosure judgment.

### A. THE AMENDED COMPLAINT SEEKS TO LITIGATE THE SAME ISSUES THAT WERE PRESENTED IN THE STATE COURT ACTION.

■ Under the doctrine of res judicata, "the test for deciding the sameness of claims requires that the same transaction, evidence, and factual issues be involved." *Sure–Snap,* 948 F.2d at 874 (citation omitted).

■ A foreclosure is a "proceeding *in rem* [and as such is] a proceeding to determine interest in property and a judgment is conclusive on the participants with respect to their interest in the property which is the subject matter of the proceeding." *Rushton v. Shea,* 419 F.Supp. 1349, 1363 (D.Del.1976).

■ Washington sought to determine its rights in the Property through the foreclosure action. Similarly, the Amended Complaint seeks to relitigate the same rights of the same parties over the same property. Indeed, relief sought in the Amended Complaint specifically seeks to avoid "any and all liens granted by [Lewison Brothers] to [Washington] to secure repayment of the mortgage loan." *See* Complaint, para. 28(b). Those liens were found to be valid by the State Court's Final Judgment of foreclosure.

This court finds that the same transaction, evidence and facts are involved in the Amended Complaint as were involved in the State Court Action.

### B. THE ISSUES ASSERTED IN THE AMENDED COMPLAINT WERE ACTUALLY LITIGATED IN THE STATE COURT ACTION.

■ The claims asserted in the Amended Complaint cannot be litigated now as they have already been litigated for purposes of res judicata. This doctrine applies even though the Appellate Division dismissed the appeal. In determining the res judicata effect of a judgment, "[t]he key factors are that there be notice and an opportunity to be heard. If these elements are present, the *res judicata* effect of a default judgment cannot be attacked." *In re Bystrek,* 17 B.R. 894, 896 (Bankr.E.D.Pa.1982) (citation omitted).

■ In assessing whether there is an identity of claims, the court will "look to the factual predicate of the claims asserted, not the legal theory upon which the plaintiff relies." *Eubanks v. FDIC,* 977 F.2d 166, 171 (5th Cir.1992) (citation omitted). It is thus the factual circumstances of the relationship between Washington and the Partnership which should be precluded from being relitigated, including all defenses and counterclaims which were not put forth in the original foreclosure action. *See Nilsen v. Moss Point,* 701 F.2d 556, 564 (5th Cir.1983) (the principal test for comparing causes of action is whether the primary right and duty or wrong are the same in each action); *Cemer v. Marathon Oil Co.,* 583 F.2d 830, 832 (6th Cir.1978) ("a judgment on the merits operates as a bar to the later suit, even though a different legal theory ... is advanced in the second suit").

■ The Partnership and Paul Lewison both had notice and an opportunity to be heard in the State Court Action on the matters raised by the Amended Complaint. The notice was Washington's foreclosure complaint. The opportunity to be heard was the Partnership's and Paul Lewison's filing of an Answer. When the Answer was stricken, they failed to timely file an amended answer. Moreover, they had every opportunity to complete their appeal of the Final Judgment or to have the trial court decide their State Court Motion for leave to file out of time an amended answer and counterclaim. They did neither.

The instant case is analogous to the entry of the default judgment in *Bystrek*. There, res judicata precluded further judication after the default judgment was entered against the debtor in bankruptcy. The *Bystrek* court held that a "default judgment is as conclusive as that which is rendered after an answer and full trial." *Id.* at 896 (citation omitted). Thus the *Bystrek* Court rejected "Counsel['s] assert[ion] that a default judgment is not a decision on the merits and, therefore, a judgment entered by default has no *res judicata* effect." *Id.* Entry of a default judgment is sufficient for res judicata purposes. The foreclosure judgment in the State Court Action precludes the instant adversary action because the Partnership and Paul Lewison filed an answer and actively litigated that case. Therefore, the issues asserted in the Amended Complaint were actually litigated in the State Court Action.

## V. *THE DEBTORS ARGUE THAT THEIR CLAIMS IN THE PRESENT LENDER LIABILITY ACTION ARE DIFFERENT FROM THOSE IN THE PRIOR STATE COURT FORECLOSURE ACTION AND COULD NOT HAVE BEEN LITIGATED IN THE PRIOR ACTION.*

### A. *THE DEBTORS ARGUE THAT THEIR CLAIMS IN THE PRESENT LENDER LIABILITY ACTION ARE DIFFERENT FROM THOSE IN THE PRIOR STATE COURT FORECLOSURE ACTION.*

■ The Debtors argue that the present lender liability suit is not based on the same cause of action as the State Court foreclosure action. *See Purter*, 771 F.2d at 690; *Athlone Industries*, 746 F.2d at 984.

The Debtors argue that whether there is identity of causes of action for the purposes of res judicata is to be determined by a number of considerations: (1) whether the acts complained of and the demand for relief are the same (i.e., whether the wrong for which redress is sought is the same in both actions); (2) whether the theory of recovery is the same; (3) whether the witnesses and documents necessary at trial are the same (i.e. whether the same evidence necessary to maintain a second action would have been sufficient to support the first); and (4) whether the material facts alleged are the same. *Purter*, 771 F.2d at 690; *Athlone*, 746 F.2d at 983.

The Debtors argue that an issue in the State Court foreclosure action was the validity in the amount of Washington's mortgage lien. Those matters were determined on the basis of the party's mortgage agreement and the debtor's subsequent payments and default, and they are not an issue in the instant case. The Debtors argue that, however, the *present action stems from Washington's mis*conduct subsequent to the mortgage agreement, the June 1988 default, the State court foreclosure action, the Debtors' bankruptcy filing, and even conduct subsequent to that. The Debtors assert that the facts in the foreclosure action, concerning the validity and amount of Washington's mortgage, are therefore materially different from the Debtors' lender liability claims, and the determination of this action will require different witness and documents from the State Court foreclosure action. Accordingly, the Debtors conclude that there is no identity of claims between this action and the prior State Court foreclosure action, and thus, res judicata does not apply.

Again, the Debtors fail to recognize the fact that they plead exactly the same issues and facts in their State Court action as those brought before this court in the instant action. Although the Debtors argue that the present action stems from Washington's mis-

conduct subsequent to the Debtors' bankruptcy filing, Paul Lewison's State Court Affidavit is nearly identical to the Amended Complaint in the instant action. Clearly there is identity of claims between the two actions, and this court finds that res judicata applies.

The Debtors rely on *National Westminster Bank, U.S.A. v. Ross*, 130 B.R. 656 (S.D.N.Y.1991), *aff'd without op.*, 962 F.2d 1 (2d Cir.1992). In that case, the lending bank, like Washington here, obtained relief from the automatic stay and subsequently collected the proceeds of the sale of the assets of the debtor. The trustee for the borrowers Chapter 7 estate later brought a lender liability action against the bank and its account officers and the bank sought summary judgment on grounds, among others of res judicata. *Id.* at 670.

The *Ross* court found that the lender liability claims affected "neither the validity of the bank's security interest in the collateral nor the amount of the outstanding debt," but rather went to "whether the Bank improperly administered its loan to [the debtor] thereby causing it injury." *Id.* at 670. The Debtors argue that as in the case at bar, the lender liability claims involved "alleged misconduct in the administration of the loans almost entirely unrelated to the negotiation and execution of the Loan Agreements or the perfection of the Bank's security interest." *Id.* at 671.

The Debtor goes on to argue that the fact that the amount and validity of the bank's security interest were an issue (like the State Court foreclosure action here) in a prior proceeding by the bank did not establish the requisite identity of issues with the Debtor's lender liability claims: The debtor cites the reasoning of *Ross* as follows:

[w]here, as here, the gravamen of the lender liability claims is fraudulent administration of the loan (as opposed to fraud in the inducement), it is difficult to conclude that such claims arise from the same transaction or occurrence which is the subject matter of lift-stay litigation to determine the extent and validity of creditor's security interest in collateral.

*Id.* at 672 (citation omitted). The court therefore rejected the bank's defense of res judicata. On the basis of the same reasoning, the debtors argue that Washington's res judicata defense must be rejected.

The rationale for *Ross* is set forth in part as follows:

Bankruptcy Code section 362(e) establishes a summary procedure for establishing relief from the automatic stay of section 362(a). The litigation history of section 362(e) makes clear that counterclaims against a debtor seeking to lift the stay involving large unrelated matters are not to be handled in the summary fashion that a hearing under section 362(e) will be; rather such counterclaims will be the subject of more complete proceedings by the trustee to recover property of the estate or object to the allowance of a claim ... Consistent with the legislative history, courts have held that "indirect defenses" such as breach of contract and fraud are not properly adjudicated in the course of resolving a creditors lift-stay motion and should be severed from the lift-stay litigation if raised in an effort to defeat the creditors motion ... Counterclaims involving such indirect defenses are generally severed from lift-stay litigation even though there may offset the creditors entire secured claim.

*Id.* at 670.

The *Ross* Court rejected application of the doctrine of *res judicata* reasoning that "had the Trustee raised its lender liability counterclaims during the lift stay litigation, Bankruptcy Code § 362(e) would have directed the Bankruptcy Court to sever these claims from the issue of the Bank's right to relief from the automatic stay". *Id.*

The *Ross* Court rejected the theory that consideration and determination of a secured creditor's motion to lift the automatic stay necessarily involves an identity of issues of law and facts identical to a debtor's "garden-variety" lender liability counterclaims. *Id.* at 672. The *Ross* Court further reasoned that the inquiry directed toward whether a creditor is entitled to relief from the automatic stay is narrow in scope. *Id.*

The same rationale does not apply in this case. The nature of a foreclosure proceeding is broader in scope and is meant to be conclusive on the participants with respect to their interest in the property which is the subject matter of the proceeding. *See Rushton v. Shea, supra.*

Again, this court points out that the Debtors raised exactly the same points in their State Court Action as are now brought before this court. Thus, these cases are clearly distinguishable on the facts from the instant case. When a party pleads certain defenses, such as lender liability, in state court actions, and then attempts to relitigate those exact issues before a bankruptcy court, the doctrine of res judicata and the entire controversy doctrine are applicable.

**B. THE DEBTORS ARGUE THAT THEIR LENDER LIABILITY CLAIMS ARE NOT BARRED BY RES JUDICATA BECAUSE THEY COULD NOT HAVE LITIGATED THESE CLAIMS IN THE PRIOR STATE COURT FORECLOSURE ACTION.**

The Debtors argue that, even assuming *arguendo* that the above arguments do not apply, res judicata is nevertheless unavailable to Washington in this case because a substantial part of the actionable conduct in question took place after the State Court judgment was rendered.

The Debtors argue that, in the case at bar, the Debtors were unaware of the full extent of Washington's misconduct when they filed their answer in the foreclosure action, which, in any event, continued after the commencement of the foreclosure action and after the Partnership filed its bankruptcy petition. *See* Lewison Aff., paras. 5–7.

In support of their argument, the Debtors cite *In re Romeo,* 16 B.R. 531, 534 (Bankr. D.N.J.1981). There, the court found that a critical consideration in applicability of the doctrine of res judicata or collateral estoppel is a "proper concern for every litigant's right to a full and fair day in court, specifically that they be given "ample opportunity" to present their respective side of the issue

sought to be precluded in the subsequent action." *Id.* at 534 (citation omitted).

The Debtors argue that res judicata is unavailable to Washington because the Debtors' lender liability claim was not and could not have been litigated in the prior state court foreclosure action. *United States v. Local 560, (I.B.T.),* 694 F.Supp. 1158, 1187 (D.N.J.1988), *aff'd without op.,* 865 F.2d 253 (3d Cir.1988), *cert. denied,* 489 U.S. 1068, 109 S.Ct. 1345, 103 L.Ed.2d 814 (1989) (because the government allege new facts requiring additional relief, which were not available when the government sought and obtained injunctive in a prior action, the later action for further injunctive relief was not barred by the doctrine of res judicata merger or collateral estoppel); *D–1 Enter. Inc. v. Commercial State Bank,* 864 F.2d 36, 40 (5th Cir.1989) (res judicata does not apply where the claim sought to be barred "could not effectively have been litigated" in that case because the expedited and summary nature of the prior lift-stay proceedings did not allow the debtor a full and fair opportunity to litigate its lender liability claims); *Ross,* 130 B.R. at 670–71; *First National Bank of Louisville v. Lustig,* 1991 WL 236857, at *2–3 (E.D.La.1991).

The Debtors argue that none of the cases cited by Washington holds to the contrary. The debtor asserts that in *Joan Ryno, Inc.,* the court found that "it's clear that any conduct of a mortgagee known to the mortgagor prior to the institution of a foreclosure that could be the basis of an independent action for damages by reason of the mortgagee having brought the foreclosure could be raised as an equitable defense in the foreclosure." *Joan Ryno, Inc.,* 208 N.J.Super. at 570, 349 A.2d 96; *see also Meding v. Hurd,* 607 F.Supp. 1088, 1100 (D.Del.1985). Thus, the Debtors conclude that it is "improper to deny plaintiff an opportunity to present claims when claims before another court were disposed of on grounds unrelated to the merits" and that the preclusions doctrines "should not operate 'entirely to deny a plaintiff an opportunity to present his facts and theory of recovery.'" *Meding,* 607 F.Supp. at 1100.

## C. THE FORECLOSURE JUDGMENT IS FINAL AND VALID AND THEREFORE PRECLUDES FURTHER LITIGATION.

■ To have preclusive effect, a judgment must be final and have been rendered in a court of competent jurisdiction. *Sure–Snap*, 948 F.2d at 872.

■ The New Jersey Superior Court judgment in the State Court Action was final. The propriety and finality of the judgment arises from the State Court's jurisdiction over the case as well as the fact that the State Court rendered its judgment before the Partnership filed its bankruptcy petition. State law controls the property rights of parties in a bankruptcy action. *Butner v. United States*, 440 U.S. 48, 51–57, 99 S.Ct. 914, 916–919, 59 L.Ed.2d 136 (1979).

■ Moreover, a prior State Court judgment determining a state law issue, such as the validity of liens, is binding on a subsequent bankruptcy court proceeding. *Gibbs*, 107 B.R. at 496 ("[w]hen a state court enters a prepetition judgment as to the amount of a claim in the proper exercise of its jurisdiction, such judgment is res judicata in bankruptcy as to the amount of the claim, although not as to its dischargeable nature."). The Superior Court foreclosure judgment granted to Washington decided purely state law issues six months before the Partnership filed its Chapter 11 petition. As such, this court is bound by the State Court's determination of rights with regard to the transaction involving the Property.

The finality and validity of the Superior Court's finding is evidenced by the Partnership's and Paul Lewison's own actions in the State Court Action. After having their Answer stricken, they filed a Motion to Vacate Judgment and Leave to File an Amended Answer. They also filed an Appeal, and in the section for "brief statements of the fact and procedural history" in their Civil Appeal Case Information Statement, they acknowledge that:

> Washington ... was granted a default judgment on foreclosure against defendants, Lewison Brothers, A Partnership and J.E. Paul Lewison, Individually, due to willful, intentional and/or fraudulent misconduct of plaintiff.

*See* Nies cert., Exhibit G.

■ The finality of the Superior Court's judgment has never been disputed by the Partnership or Lewison. The continued acceptance and acknowledgment of the Superior Court's Final Judgment by the Partnership and Paul Lewison in the State Court Action serves to judicially estop them now from challenging through this motion the finality or validity of that judgment. *Mutual Benefit Life Ins. Co. v. Zimmerman*, 787 F.Supp. 71, 74 (D.N.J.1992), *aff'd without op.*, 970 F.2d 899 (3d Cir.1992) (movants judicially estopped from asserting a position different from that stated by counsel in court); *Lewandowski v. National R.R. Passenger Corp. (Amtrak)*, 882 F.2d 815, 818–819 (3d Cir. 1989) (plaintiff judicially estopped from asserting claims based on defendant's refusal to let him return to work before public law board adjudicating grievances under collective bargaining agreement because plaintiffs' trial attorney had previously stated in court that plaintiff was not capable of doing railroad work). Thus, the State Court Action is clearly a valid, final judgment.

■ In this case moreover, it is clear that the lender liability claim could have been brought in the prior State Court Action. This determination is germane to a finding of res judicata since the doctrine bars re-litigation not just of claims which were brought in a prior proceeding, but of 'any other admissible matter' which could have been brought, but was not. *Sure–Snap*, 948 F.2d at 873 (citing *Commissioner of Int'l Revenue v. Sunnen*, 333 U.S. 591, 597, 68 S.Ct. 715, 719, 92 L.Ed. 898 (1948)). This case also meets the test for sameness of claims, as the present claims involve the same transaction, evidence and factual issues. *Id.* Accordingly the doctrine of res judicata bars relitigation of these claims.

■ In sum, this court grants Washington's motion for summary judgment to dismiss the Amended Complaint as to all defendants, including Wendy Lewison with prejudice. As to Wendy Lewison, while she was not a party to the State Court action, the

claims she asserts derive exclusively from the claims asserted by Paul Lewison so that there is sufficient identity of parties to apply the principles of res judicata to her claims. *See Eubanks v. FDIC, supra.* This court grants Washington's motion to dismiss the Amended Complaint because the Debtors' claims of lender liability are barred under the doctrine of res judicata and the entire controversy doctrine.

An order shall be submitted in accordance with this opinion.