**In re 9281 SHORE ROAD OWNERS CORP., Debtor.**

**9281 SHORE ROAD OWNERS CORP., Plaintiff,**

v.

**SEMINOLE REALTY CO., Sanford Sirulnick, Joseph Sirulnick, David T. Goldstick, Franklin J. Barr and Larry H. Abrams, Defendant.**

**Bankruptcy No. 893–80885–167(JJC).**
**Adversary Nos. 893–8081–167(JJC), 895–8702–167(JJC).**

United States Bankruptcy Court, E.D. New York.

Oct. 30, 1997.

---

See also: 187 B.R. 837.

Lambert Weiss & Pisano by Alan M. Goldberg, New York City, for Defendants David Goldstick, Franklin Barr and Larry Abrams.

Jaspan, Schlesinger, Silverman & Hoffman by Salvatore LaMonica, Kenneth Silverman, Andrew S. Muller, Garden City, NY, for Seminole Realty.

Jeffrey S. Eisenberg, New York City, for Fleet Real Estate Funding Corp., Successor in Interest to Norstar Bank.

## OPINION AND ORDER

JOHN J. CONNELLY, Bankruptcy Judge.

Before this Court is a motion to dismiss pursuant to Rule 7012(b)(6) of the Federal Rules of Bankruptcy Procedure ("Fed. R. Bankr.P."), brought by the Defendants, Seminole Realty Co. ("Seminole"), Sanford Sirulnick, and Joseph Sirulnick (hereinafter collectively known as the "Seminole Defendants"): (1) to dismiss the first, second, third, fourth, fifth, sixth, and seventh causes of action (the "1993 Adversary Proceeding") of 9281 Shore Road Owners Corp. (the "Debtor"), on the grounds that they are barred by the doctrines of *res judicata* and collateral estoppel; and (2) to dismiss the first, second, third, and fourth causes of action for failure to state a cause of action under § 544(b) of the Bankruptcy Code[1] on the ground that the Debtor has not demonstrated the existence of a creditor upon which it can support its avoidance claims.[2] In addition, defendants David Goldstick ("Goldstick"), Franklin Barr ("Barr"), and Larry Abrams (hereinafter collectively known as the "Goldstick Defendants") brought a motion to dismiss the eighth cause of action on the grounds that is barred by the doctrines of *res judicata* and collateral estoppel.

The Court will also consider two motions to remand brought by the Defendants in the

Kensington & Ressler by Michael J. Venditto, New York City, for Plaintiff.

1. Unless otherwise indicated, all statutory references are to Title 11 of the United States Code.

2. This Court has jurisdiction over the subject matter of this case under 28 U.S.C. §§ 1334(a) and 157(a). This is a core proceeding under 28 U.S.C. § 157(b)(2)(H) and under the Order of Reference of the United States District Court for the Eastern District of New York dated August 28, 1986. See Discussion, *infra* at 682.

State Court fraud action (the "Fraud Action" or "1995 Adversary Proceeding") which the Debtor has since removed to Bankruptcy Court. The defendants in that action are Seminole, Sanford Sirulnick, Ditmas Management Corp. ("Ditmas"), Goldstick, Barr, and Barry Wiener (hereinafter collectively known as the "1995 Adversary Proceeding Defendants"). They assert that the removal of the Fraud Action was improper pursuant to Fed. R. Bankr.P. 9027(d) and that 28 U.S.C. § 1452(b) provides an additional ground for the action to be remanded and dismissed. In the alternative, Seminole, Sirulnick, and Ditmas request that the Court abstain from hearing the 1995 Adversary Proceeding pursuant to 28 U.S.C. §§ 1334(c)(1) and (c)(2) and Fed. R. Bankr.P. 5011.

## BACKGROUND

The Debtor is a residential New York cooperative apartment corporation organized by Seminole on or about February 4, 1985.[3] At its inception, all of the outstanding shares of common stock of the Debtor were issued to Seminole, thus making Seminole the sole shareholder of all of the 50,000 outstanding shares of the Debtor. On December 27, 1985, a Certificate of Amendment to the Certificate of Incorporation was filed with New York State increasing the number of shares issued to 120,000. The Debtor's sole asset is an apartment building located at 9281 Shore Road in the Bay Ridge section of Brooklyn. Seminole was the sponsor of the offering plan which converted the building to cooperative ownership. The building contains 107 apartments, of which 58 are owned by persons who purchased both their shares in the Debtor corporation and their apartments from Seminole subsequent to conversion to

cooperative ownership in 1988. Seminole owns the remaining 49 apartments.

On April 9, 1985, Seminole caused the Debtor to acquire the subject premises from an unrelated entity for a total purchase price of $3,988,960.32. The purchase price for the building was financed in the following manner: (1) the Debtor assumed a first mortgage on the property held by American Savings Bank ("American") in the approximate principal amount of $1,049,195.50; (2) the Debtor borrowed $2 million from Barclay's Bank of New York ("Barclays"), giving Barclays a second mortgage on the property in that amount; and (3) the Debtor contributed $939,764.82, representing funds loaned or contributed by Seminole. After acquisition of the building on April 9, 1985, the Debtor had title to the building subject to the two mortgages in the sum of approximately $3 million. Sanford Sirulnick, a principal of Seminole and officer of the Debtor, claims that while acting as an officer of the Debtor, prior to its conversion to cooperative ownership, he made improvements and repairs to the premises in the approximate sum of $430,000.

On December 8, 1986, Seminole filed a cooperative offering plan with the Attorney General to convert the property to cooperative ownership (the "Offering Plan"). The Offering Plan enabled Seminole to offer apartments in the building for sale as part of its effort to convert the property to cooperative ownership. The Offering Plan disclosed all of the essential aspects of the financial transaction resulting in the conversion, including the details of a wraparound mortgage[4] (the "Wrap Mortgage"). The Offer-

---

**3.** This Court adopts and incorporates by reference the factual findings made by the District Court in *9281 Shore Road Owners Corp. v. Seminole Realty Co. (In re 9281 Shore Road Owners Corp.)*, 187 B.R. 837 (E.D.N.Y.1995) and by State Supreme Court Judge Yoswein in *Seminole Realty Co. v. Shore Road Owners Corp.*, Index No. 17676/93 (December 16, 1993) (unpublished opinion).

**4.** A wraparound mortgage is:
[i]n real estate law, a second mortgage which allows the borrower to take advantage of a low interest first mortgage without being subject to the usual cash flow demands of carrying both a

first and second mortgage. The face amount of the wraparound mortgage is the amount due on the first mortgage plus the amount due on the second mortgage. Annual payments are computed on this combined amount, and are applied to satisfy the payments due on the first mortgage before being applied to the wraparound mortgage. The wraparound mortgage is frequently used in the purchase and sale of realty when the seller's mortgage is at more advantageous terms than financing available to the buyer.
*Black's Law Dictionary* at 557 (4th ed.1996).

ing Plan was provided to each prospective purchaser. On June 8, 1988, the conversion to cooperative ownership closed and those shares which were sold were issued to shareholders. The remaining shares were retained by Seminole as unsold shares. Pursuant to the Offering Plan, Ditmas Management Corp., a related entity of Seminole, was retained as managing agent of the premises.

Also on June 8, 1988, Seminole caused the Debtor to convey to Seminole a mortgage note in the sum of $3,500,000, and a Wrap Mortgage, encompassing both the existing first and second mortgages. The Wrap Mortgage was subordinate both to the mortgage held by Barclays in the principal amount of $1,887,868.30 as well as a consolidated second mortgage held by Seminole in the principal amount of $996,502.50. Pursuant to the terms of the Wrap Mortgage, the Debtor was obligated to make monthly payments of $23,333.33 to be applied to interest only until June 8, 1993. On that date, the entire unpaid principal balance, together with all accrued interest, was to become due and payable in one balloon installment. This Wrap Mortgage created an additional indebtedness secured by the building in the amount of $615,629.47 above the amounts owing under the existing two mortgages. Raising a major issue in this case, the Debtor contends that there was no consideration for this additional indebtedness.

Prior to January 1, 1993, the Debtor was current for four and one-half (4½) years on all of its obligations under the mortgage. However, the January 1993 mortgage payment was placed into a special account and not paid to Seminole. This default occurred approximately six months prior to the due date of the balloon payment under the terms of the Wrap Mortgage.

### PROCEDURAL HISTORY

On January 10, 1993, immediately after the Debtor's default on the balloon payment, Seminole instituted a foreclosure action in the Supreme Court, State of New York, County of Kings (the "State Court"). On January 22, 1993, shortly after the institution of the foreclosure action, Seminole obtained an *ex parte* order from the State Court appointing Morton Freedman as receiver of the property with authority to collect all rents and profits and to take possession, custody, and control of the property. Pursuant to an order to show cause of the State Court dated February 9, 1993, the Debtor's management company was enjoined and restrained from transferring any funds out of the Debtor's operating accounts to any party, other than to the receiver.

On February 11, 1993, the Debtor filed a voluntary petition for relief pursuant to Chapter 11 of the Bankruptcy Code and became a debtor-in-possession. On that date, the Debtor also filed a notice of removal which sought to remove the foreclosure action from the State Court to the Bankruptcy Court. Seminole filed a motion in opposition to the Debtor's notice of removal. By stipulation and order dated February 24, 1993, the Debtor consented to a remand of the foreclosure action to the State Court. By orders of February 24, 1993 and March 12, 1993, the Bankruptcy Court modified the automatic stay to allow the foreclosure action to proceed uninhibited by the bankruptcy filing and continued the State Court receiver in custody and control of the property.

On April 13, 1993, the State Court granted Seminole's motion for summary judgment thereby dismissing the Debtor's affirmative defenses and counterclaims. *Seminole Realty Co. v. 9281 Shore Road Owners,* Index No. 17676/93 (December 16, 1993)(unpublished opinion) (the "Summary Judgment Decision"). The Summary Judgment Decision, by State Supreme Court Judge Leonard E. Yoswein, consisted of the following holdings: First, the Debtor had the burden of establishing, by admissible evidence, "any defense which could properly raise a question of fact as to its default on the mortgage" and the Debtor failed to meet this burden. *Id.* at 6. Second, the execution of the Wrap Mortgage is considered a valid transaction supported by consideration; the consideration for the mortgage is the property transferred to the co-operative apartment corporation, the Debtor. *Id.* at 7. Third, the "additional indebtedness created by the [Wrap Mortgage] did not lack consideration since it is

unrefuted that Seminole, on behalf of [the Debtor], paid in excess of $900,000 in connection with [the Debtor's] purchase of the premises" and the Debtor has not disputed that "Seminole expended approximately $430,000 in maintaining the premises prior to conversion." *Id.* Fourth, there was never "an express or implied promise by Seminole to transfer the unsold shares back to [the Debtor] . . . there is no basis for the imposition of a constructive trust." *Id.* at 8. Fifth, the Debtor "had full knowledge of the details concerning the [Wrap Mortgage] as well as the rights of the holders of the unsold shares as disclosed in the Offering Plan, [the Debtor] has failed to state a claim. . . ." *Id.* at 9. Sixth, the "alleged misrepresentation of the building's value cannot be attributed to Seminole" since the financial statement relied upon was prepared by accountants hired by the non-sponsor-controlled board of directors. *Id.* at 10.

Judge Yoswein further concluded that the Debtor: 1) failed to demonstrate any fraudulent activity by Seminole, and 2) failed to establish the existence of any material issues of fact; therefore, the motion for summary judgment was granted. *Id.* at 6–13.

In its decision, the State Court also directed the preparation of a Referee's Report. The foreclosure, however, never took place because the Debtor filed a notice of appeal. The State Court's Summary Judgment Decision was ultimately affirmed by the Appellate Division.[5]

On July 28, 1993, the Bankruptcy Court, Judge Ryan, granted Seminole's motion to dismiss the Debtor's Chapter 11 petition for lack of good faith. Thereafter, the Debtor appealed to the United States District Court. On October 16, 1995, the District Court reversed and reinstated the Debtor's Chapter 11 petition. *9281 Shore Road Owners Corp. v. Seminole Realty Co., (In re 9281 Shore Road Owners Corp.),* 187 B.R. 837 (E.D.N.Y. 1995). In its opinion, the District Court reinstated the Debtor's petition ·and, in dicta, discussed many of the claims, i.e. fraudulent

conveyances and breach of fiduciary duty, which are now before this Court. *Id.* at 850–51. During the pendency of the appeal of the Bankruptcy Court order, the foreclosure action in the State Court continued; the Debtor neither requested a stay pending the Bankruptcy Court appeal nor did the Debtor or Defendants inform the District Court of the continuing foreclosure action in the State Court. (Tr. 6/26/96 at 17–18).

Additionally, on or about July 7, 1994, during the pending Bankruptcy Court appeal, the Debtor commenced another action in State Court alleging various causes of action under theories of fraud, breach of contract, breach of fiduciary responsibility, self-dealing, embezzlement, and negligence. On February 27, 1995, the Debtor filed a Supplemental Summons and Amended Verified Complaint in the Fraud Action. On November 30, 1995, the Debtor filed an Application for Removal seeking to remove the Fraud Action from the State Court to the Bankruptcy Court, thereby commencing the 1995 Adversary Proceeding.

### A. THE 1993 ADVERSARY PROCEEDING

The complaint in the pending 1993 Adversary Proceeding sets forth seven causes of action against Seminole, Sanford Sirulnick, and Joseph Sirulnick. In addition the complaint sets forth one cause of action against the three Seminole attorneys, the Goldstick Defendants. The thrust of the claims charge that Seminole, aided and abetted by the Goldstick Defendants, who functioned as the officers and directors of the Debtor, extracted the equity from the Debtor without conferring on it any corresponding benefit or consideration. (Complaint ¶ 10). The first seven claims in the complaint are directed against Seminole, and the eighth is directed solely against the Goldstick Defendants.

The first four claims are based on alleged violations of the New York Debtor and Creditor Law ("DCL") §§ 273, 274, 275, and 276, each coupled with a related claim under § 544(b) of the Bankruptcy Code. The fifth

---

**5.** It is significant to note that Seminole and Goldstick's motions to dismiss were pending before this Court during the course of the State Court Appeal. Both the Debtor and the Defendants did

not object to the Court's postponement on ruling on these motions until the Appellate Division made a final determination. (Transcript ("Tr.") 6/26/96 at 25–27).

claim is based on conveyances to Seminole alleged to be unsupported by consideration. The sixth claim asks for a judgment against Seminole canceling the Seminole mortgage note, the Wrap Mortgage, and the unsold shares, voiding all liens and requesting an accounting for profits received and income earned in connection with all these matters. The seventh claim seeks a subordination of the Seminole claims to all other claims or interests and a transfer of the Seminole liens to the bankrupt estate, pursuant to § 510(c) of the Bankruptcy Code. The eighth claim is based on a breach of fiduciary duty by the Seminole attorneys.

## THE DEFENDANT'S ARGUMENTS

In the case at bar, the Seminole Defendants assert that the first, second, third, fourth, fifth, sixth, and seventh causes of action are barred by the doctrines of *res judicata* and collateral estoppel. The Goldstick Defendants also assert that the eighth cause of action is barred by the doctrines of *res judicata* and collateral estoppel. Both the Seminole Defendants and the Goldstick Defendants assert that the necessary elements of the causes of action have previously been fully and fairly litigated and necessarily decided by the State Court against the Debtor in the Summary Judgment Decision and Order; thus, the Debtor should be precluded from relitigating these issues in Bankruptcy Court. In addition, the Seminole Defendants contend that the first, second, third, and fourth claims which seek relief pursuant to § 544(b) fail to state a cause of action because they do not allege the existence of a creditor holding an allowed claim who could avoid the transfers under applicable State law.

In the foreclosure action in the State Court, the Debtor asserted three affirmative defenses which state in pertinent part that: (1) the complaint fails to set forth a cause of action upon which relief can be granted; (2) the plaintiff has failed to join persons who ought to be parties if complete relief is to be accorded between the persons who are par-

ties to the action; and (3) the Wrap Mortgage and other Closing Conveyances [6] were void for failure of any underlying consideration. (Verified Answer and Counterclaims ¶¶ 37–39). In addition, the Debtor asserted three counterclaims which state in pertinent part that: (1) Seminole, as sponsor of the cooperative conversion, caused the Debtor to issue unsold shares of the Debtor to Seminole without receiving any consideration, and improperly diverted the proceeds from the sale of the Debtor's shares, thereby rendering the Debtor insolvent; (2) there was no consideration for the additional indebtedness of $615,629.97 of the Wrap Mortgage and thus void for a want of consideration; and (3) certain officers and directors breached their fiduciary duty to the Debtor by conspiring to divert the assets of the corporation for the benefit of Seminole. (Verified Answer and Counterclaims ¶¶ 40–79).

The Seminole Defendants and the Goldstick Defendants contend that the State Court considered each of the Debtor's affirmative defenses and counterclaims and found them to be without merit. They further allege that the causes of action in the present adversary proceeding are identical to the affirmative defenses and counterclaims raised, litigated, and decided against the Debtor in the State Court foreclosure action. Consequently, they claim that the doctrines of *res judicata* and collateral estoppel should apply.

## THE DEBTOR'S ARGUMENTS

The Debtor asserts that barring its claims based on *res judicata* or collateral estoppel is unwarranted. The Debtor contends that it is now asserting claims against the Seminole Defendants which were not available to it in State Court, and that the State Court did not consider any of the issues which are presented by this adversary proceeding. They allege that the State Court refused to consider the existence of any set-offs, including the adequacy of the consideration underlying the Wrap Mortgage and that the State Court did not adjudicate any of the defenses raised by the Debtor. (Debtor–Plaintiff's Memoran-

6. According to the Debtor, the "Closing Conveyances" consisted of the transfer of the cash proceeds of any unsold shares, the Seminole mort-
gage note, and the Seminole Wrap Mortgage. *See Verified Answer and Counterclaims* at 10.

dum of Law In Opposition To Motion Of Certain Defendants To Dismiss Adversary Proceeding at 20). Therefore, the Debtor contends that its claims should not be barred.

·The Debtor further argues that its claim of breach of fiduciary duty against the Goldstick Defendants has not been fully litigated and that the issue was not necessarily decided in State Court. The Debtor alleges that the Goldstick Defendants' breach of fiduciary duty results from their simultaneous representation of Seminole in the Closing Conveyances and their positions as officers and directors of the Debtor. According to the Debtor, since this issue was not necessarily decided nor fully litigated in State Court, the doctrines of *res judicata* and collateral estoppel should not apply.

## THE SEMINOLE DEFENDANTS AND THE GOLDSTICK DEFENDANTS' MOTIONS TO DISMISS ARE PROPERLY BEFORE THE COURT

■ The Seminole Defendants and the Goldstick Defendants have brought motions to dismiss the complaint for failure to state a claim upon which relief can be granted, pursuant to Fed. R. Bankr.P. 7001, 7008, 7012(b)(6), 7012(c), and 7056.[7] Normally the defenses of *res judicata* and collateral estoppel are affirmative defenses to be raised in an answer under Rule 8(c) of the Federal Rules of Civil Procedure. "However, when all relevant facts are shown by the court's own records, of which the court takes notice, the defense may be upheld on a Rule 12(b)(6) motion without requiring an answer." *Day v. Moscow,* 955 F.2d 807, 811 (2d Cir.1992) (citations omitted).

The Bankruptcy Court, however, can take judicial notice of all of the documents which are part of the record before it, as well as the documents contained in the record before the State Court, without having to convert the motion to one for summary judgment.

> In considering a motion to dismiss for failure to state a claim under Fed.R.Civ.P. 12(b)(6), a district court must limit itself to facts stated in the complaint or in documents attached to the complaint as exhib-

its or incorporated in the complaint by reference. Of course, it may also consider matters of which judicial notice may be taken under Fed.R.Evid. 201. If a district court wishes to consider additional material, Rule 12(b) requires it to treat the motion as one for summary judgment under Rule 56, giving the party opposing the motion notice and an opportunity to conduct necessary discovery and to submit pertinent material.

*Kramer v. Time Warner Inc.,* 937 F.2d 767, 773 (2d Cir.1991) (citations omitted).

Accordingly, the Court finds that the Seminole Defendants and the Goldstick Defendants' motions to dismiss are properly before the Bankruptcy Court.

## THE APPLICATION OF COLLATERAL ESTOPPEL TO PLAINTIFF'S EIGHT CAUSES OF ACTION

■ The doctrine of collateral estoppel "prevents a party from relitigating an issue clearly raised in a prior action and decided against that party...." *Conte v. Justice,* 996 F.2d 1398, 1400 (2d Cir.1993) (citations omitted).

> This general rule is demanded by the very object for which civil courts have been established, which is to secure the peace and repose of society by the settlement of matters capable of judicial determination. Its enforcement is essential to the maintenance of social order; for the aid of judicial tribunals would not be invoked for the vindication of rights of person and property if, as between the parties and their privities, conclusiveness did not attend the judgments of such tribunals in respect of all matters properly put in issue, and actually determined by them.

*In re DEF Investments, Inc.,* 186 B.R. 671, 681 (Bankr.D.Minn.1995) (citing *Southern Pac. R.R. Co. v. United States,* 168 U.S. 1, 48–49, 18 S.Ct. 18, 27, 42 L.Ed. 355 (1897)).

■ There is a two-step test for determining whether collateral estoppel applies: (1) was the issue "necessarily decided" by the

---

**7.** The Goldstick Defendants' motion to dismiss is made pursuant to Rules 7012(b), 7012(c), and

7056 of the Federal Rules of Bankruptcy Procedure.

court; and (2) did the litigant have a "full and fair opportunity" to litigate the issue.

Initially, the court must determine whether the issue sought to be litigated is identical to an issue necessarily decided in the prior action and decisive on the present action. *Schwartz v. Public Adm'r of Bronx,* 24 N.Y.2d 65, 71, 298 N.Y.S.2d 955, 960, 246 N.E.2d 725, 729 (1969). Upon satisfaction of the issue identity requirement, inquiry turns toward whether the party to be bound had a full and fair opportunity to contest the determination now said to control. *Id.*

*Conte,* 996 F.2d at 1400.

■ This Court finds that the Debtor's claims are barred because the issues that the Debtor seeks to litigate are identical to the issues necessarily decided by the State Supreme Court and affirmed by the Appellate Division, and these very same issues were already fully and fairly litigated, decided, and affirmed in the State Court action. It is black letter law that the Bankruptcy Court cannot act as an appellate court to determine whether the State Court's decision was correct. That decision must be taken as correct and must be accorded Full Faith and Credit under 28 U.S.C. § 1738 which provides that state judicial proceedings "shall have the same full faith and credit in every court within the United States . . . as they have by law or usage in the courts of such State . . ." 28 U.S.C. § 1738. Thus, the only determination to be made by this Court is whether the present claims have already been "necessarily decided" and "fully and fairly litigated."

■ The first part of the *Conte* test is discussed below in relation to each cause of action. In the second part of the *Conte* test, the party seeking to avoid the use of collateral estoppel must demonstrate that it did not have a full and fair opportunity to litigate the issues. *Conte,* 996 F.2d at 1400. The Court may consider several factors in determining whether issues have been "fully and fairly litigated," including but not limited to the size of the claim, the extent of the litigation, and the foreseeability of future litigation. *Gilberg v. Barbieri,* 53 N.Y.2d 285, 441 N.Y.S.2d 49, 423 N.E.2d 807 (1981); *Dusovic v. New Jersey Transit Bus Operations, Inc.,* 124 A.D.2d 634, 508 N.Y.S.2d 26 (2d Dept. 1986).

In the instant case, the size of the claims are identical. In the 1993 adversary complaint, the Debtor seeks $10 million in damages. Similarly, in the State Court action, the Debtor sought $10 million in damages. Also, the extent of the prior litigation was substantial; the Debtor submitted an answer, *containing affirmative defenses and counterclaims, and affidavits to the State Court and subsequently appealed to the panel of judges in the Appellate Division. Further, the Debtor could and should have foreseen future litigation of these very same claims since it had instituted a parallel action in Bankruptcy Court while the State Court proceeding was pending. The Debtor had a full and fair opportunity to litigate its claim—first, in the New York State Supreme Court and then in the Appellate Division.[8] In fact, the motions to dismiss before this Court were held in abeyance, with no objection from the Debtor, pending the decision of the Appellate Division. (Tr. 6/26/96 at 25–27). For the foregoing reasons, this Court is satisfied that the Debtor fully and fairly litigated its claims and the issues before State Court Judge Yoswein and the panel of judges in the Appellate Division.*

■ *The District Court, in its decision, was not made aware of the progressing foreclosure action in the State Court (Tr. 6/26/96 at 17–18 and Tr. 2/4/97 at 30) and its review and ruling only related to whether Bankruptcy Judge Ryan was correct in dismissing the Debtor's Chapter 11 petition. 9281 Shore Road Owners Corp. v. Seminole Realty Co.*

---

8. Significantly, during the February 4, 1997 hearing before this Court, one of the defendants' attorneys also stated that before the removal of the State Court action (the "1995 Adversary Proceeding") to this Court, he not only had submitted a motion to dismiss the 1995 action before Judge Yoswein, "but we had oral argument on that motion. And Judge Yoswein indicated to all of the parties that he was familiar with all of the issues having handled not only the foreclosure action, but there were other actions as well that I was not involved in. The Judge said he had a whole room of boxes and documents dealing with all the 9281 Shore Road cases, and that he would promptly decide this motion." (Tr. 2/4/97 at 9).

(In re 9281 Shore Road Owners Corp.), 187 B.R. 837 (E.D.N.Y.1995). The parties to this action do not dispute that the State Court has the jurisdiction to hear foreclosure proceedings. See N.Y. Judiciary Law § 140–b (McKinney 1992); Johnson v. Dunbar, 114 N.Y.S.2d 845 (1952), aff'd, 282 A.D. 720, 122 N.Y.S.2d 222 (2d Dept.1953), aff'd, 306 N.Y. 697, 117 N.E.2d 801 (1954). Instead, the Debtor asserts that since certain remedies, i.e. equitable subordination, may only be fashioned by the Bankruptcy Court; therefore res judicata and collateral estoppel cannot be applied to the State Court's decision. (Debtor–Plaintiff's Memorandum of Law In Opposition To Motion Of Certain Defendants To Dismiss Adversary Proceeding at 40 and Tr. 2/4/97 at 19–21, 30).

This Court finds the aforementioned arguments by the Debtor without merit. Before one can assert that a certain remedy should be used, certain facts must first exist that will give rise to that remedy. While the District Court stated in dicta that certain remedies, such as equitable subordination, may only be fashioned by the Bankruptcy Court, 9281 Shore Road, 187 B.R. at 852–53, the District Court did not find that the factors giving rise to such a remedy existed in the instant case. Thus, it is important to note that the District Court did not suggest that if a final, factual determination was made by the State Court, which did not give rise to the remedy of equitable subordination, the Bankruptcy Court would be required to rehear the claim.[9]

Significantly, in the instant case, all parties concede that the very same facts which were presented to the State Court are now before this Bankruptcy Court. (Tr. 2/4/97 at 53). Thus, it is clear that the Debtor now seeks different remedies based on the same facts but on different legal theories.[10] As Defendants' attorney correctly states:

> These causes of action are based upon the same factual allegations that were raised in the State Court. They were finally and fully and fairly determined in the State Court. The only difference is now they are based upon a different legal theory. When you have the same factual determinations and the rights of the parties already determined in the State Court, just because a couple of months later or subsequently you think of a new theory, does not give you the right to bring a new cause of action. Your right is to take an appeal of the prior Court's decision, which the debtor here did at this Court's suggestion, and which it lost on appeal, which has not been taken up to the Court of Appeals and no motion for leave to appeal has been made.

(Tr. 2/4/97 at 34).

It is surprising to this Court that the Debtor has taken the position that collateral estoppel should not be invoked since it was the Debtor who appealed the State Supreme Court decision to the Appellate Division and did not object to the postponement of the Court's ruling on Seminole Defendants' motion to dismiss the Adversary Complaint until a determination was made by the Appellate Division. It appears to this Court that the Debtor is seeking "many bites out of the

---

**9.** As previously stated, the parties do not dispute that the District Court had no knowledge that the State Court proceeding was still viable. See Discussion, supra at 685.

**10.** At the hearing on February 4, 1997, the Court and the parties engaged in the following colloquy:

> The Court: But what I hear from all this conversation is that what you put in your [Debtor's] papers, your submission and proposition to foreclosure, are basically the same counts that are in your complaint, and you are asking me now to say, Well, yes, Judge, another Judge took another look at this and he didn't accept it, but I want you to take a look at it and you should, Judge because under the Bankruptcy Code is that section dealing with equitable principal subordination, or at some point in other claims, and, you know, you might get a different fix on these same facts. You've got them in your case in the Bankruptcy Court, and you advance them over in the State Court and not in your opposition to foreclosure. Isn't that where you are coming from?
>
> Mr Venditto (Debtor's Attorney): No, Your Honor. The same facts were presented because the facts, as we have them, are the facts. The presentation.
>
> The Court: Now I have more facts.
>
> Mr. LaMonica (Defendants' Attorney): No, your Honor, that's the key. He is still using the same facts, except a different legal theory. It is the same facts.
>
> Tr. 2/4/97 at 53.

same apple." Having received an adverse decision by the State Court, the Debtor appealed to the Appellate Division and the proceedings before this Court were suspended pending appellate resolution. Having once again received an adverse decision by the Appellate Division, the Debtor now seeks to relitigate the very same facts and issues before this Court, hoping for a favorable decision. What the Debtor is seeking to do is exactly what collateral estoppel seeks to prevent: the continuous relitigation of the same issues and the exhaustion of judicial resources.

### 1. *The First Three Causes of Action*

■■■ Having concluded that collateral estoppel should be invoked and that the Debtor had a full and fair opportunity to litigate the issues, this Court will now set forth how it came to its conclusion with respect to each of the causes of action. The Debtor's first three causes of action allege that the Wrap Mortgage constituted a fraudulent conveyance under DCL §§ 273,[11] 274,[12] and 275.[13] An essential element of a claim pursuant to DCL §§ 273, 274, and 275 is lack of fair consideration. *Atlanta Shipping v. Chemical Bank*, 818 F.2d 240, 248 (2d Cir.1987) (holding that the repayment of an antecedent debt constitutes fair consideration).

This issue of whether there was consideration has already been decided by the State Court and therefore should not be relitigated here. As Judge Yoswein concluded in his decision:

The third affirmative defense and second counterclaim, which both assert that the

additional indebtedness created by the wraparound mortgage was without consideration, *are also unfounded.* The execution of a wraparound mortgage in connection with a cooperative conversion has been held to be a valid transaction and the consideration for the mortgage is the property transferred to the apartment corporation. (*Landsman v. S & I Assoc.*, NYLJ, June 23, 1993, at 26, col. 6). The additional indebtedness created by the wraparound mortgage did not lack consideration since it is unrefuted that Seminole, on behalf of 9281 [ (the Debtor) ], paid in excess of $900,000 in connection with 9281's [ (the Debtor's) ] purchase of the premises. In addition, 9281 [ (Debtor) ] has not disputed the fact that Seminole expended approximately $430,000 in maintaining the premises prior to conversion.

(Summary Judgment Decision at 7) (emphasis added). This precise issue of lack of consideration was litigated before Judge Yoswein and he determined that there was indeed consideration for the transfer. Thus, the Debtor had previously litigated this issue in State Court, sought to and did have this issue reheard on appeal, and should not now be given a third chance to relitigate it.

### 2. *The Fourth Cause of Action*

■■■ The Debtor's fourth cause of action is premised upon DCL § 276 [14] and alleges that the Wrap Mortgage and the other Closing Conveyances were made with the intent to hinder, delay, or defraud creditors. In order to sustain a cause of action pursuant to DCL § 276, the Debtor must establish actual

---

11.  DCL § 273 states in pertinent part that:
[e]very conveyance made and every obligation incurred by a person who is or will be thereby rendered insolvent is fraudulent as to creditors without regard to his actual intent if the conveyance is made or the obligation is incurred without a fair consideration.

12.  DCL § 274 states in pertinent part that:
[e]very conveyance made without fair consideration when the person making it is engaged or is about to engage in a business or transaction for which the property remaining in his hands after the conveyance is an unreasonably small capital, is fraudulent as to creditors and as to other persons who become creditors during the continuance of such business or transaction without regard to his actual intent.

13.  DCL § 275 states in pertinent part that:

[e]very conveyance made and every obligation incurred without fair consideration when the person making the conveyance or entering into the obligation intends or believes that he will incur debts beyond his ability to pay as they mature, is fraudulent as to both present and future creditors.

14.  DCL § 276 states in pertinent part that:

[e]very conveyance made and every obligation incurred with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud either present or future creditors, is fraudulent as to both present and future creditors.

intent to hinder, delay, or defraud creditors, as intent cannot be presumed. *Feist v. Druckerman,* 70 F.2d 333, 334 (2d Cir.1934); *In re Glenmore Distilleries Co. v. Seideman,* 267 F.Supp. 915, 919–20(E.D.N.Y.1967); *In re Moore,* 177 B.R. 437, 442 (Bankr.N.D.N.Y. 1994).

Again, this issue was previously litigated in the State Court and Judge Yoswein decided that Seminole acted properly in effectuating the Offering Plan. "Seminole, as sponsor of the offering plan and sole shareholder of 9281 [ (the Debtor) ] prior to conversion, was, pursuant to the offering plan, entitled to retain any unsold shares and the accompanying proprietary leases (*see, Richards v. Estate of Kaskel,* 169 A.D.2d 111, 118, 570 N.Y.S.2d 509)." (Summary Judgment Decision at 7). "Consequently, *having failed to demonstrate any fraudulent activity by Seminole,* there is no need to postpone Seminole's summary judgment motion ..." (Summary Judgment Decision at 11) (emphasis added). Thus, this claim has already been fully litigated and necessarily decided; consequently it is barred by collateral estoppel.

### 3. *The Fifth Cause of Action*

The Debtor' fifth cause of action asserts a general claim for damages based on the allegation that the Wrap Mortgage and the other Closing Conveyances are void for a want of consideration.

---

**15.** *Compare* the Complaint ¶¶ 40–41 of the 1993 Adversary Proceeding with the Complaint ¶¶ 70–73 of the State court action. The 1993 Adversary Proceeding complaint ¶¶ 40–41 states in pertinent part:

40. By reason of the foregoing, the Plaintiff is entitled to a judgment against Seminole (a) canceling the Seminole Mortgage Note, the Seminole Wrap Mortgage, and the Unsold Shares, (b) voiding any obligations, liens, or other interests created thereunder or arising or otherwise relating thereto, (c)directing Seminole to account to the Plaintiff for all profits received and income earned in connection with the Closing, the Seminole Mortgage Note, the Seminole Wrap Mortgage or the sale of the Equity.
41. The Plaintiff lacks an adequate remedy at law.

**16.** The State Court Complaint ¶¶ 70–73 states in pertinent part:

This claim, like the first, second, and third causes of action, has also already been decided by the State Court. The State Court decided that the Wrap Mortgage and other Closing Conveyances were supported by consideration, *see* Discussion, *supra* at 687, and the Debtor should not be given yet another bite at the apple.

### 4. *The Sixth Cause of Action*

The Debtor's sixth cause of action seeks a judgment against Seminole canceling the Seminole Mortgage Note, the Seminole Wrap Mortgage, and the Unsold Shares, voiding all liens and requesting an accounting for profits received and income earned in connection to all these matters. The Debtor contends that there was no consideration given for these Closing Conveyances.

This cause of action [15] is virtually identical to the Debtor's second counterclaim [16] in the State Court action which was decided to be without merit. Judge Yoswein concluded that "the third affirmative defense and second counterclaim, which both assert that the additional indebtedness created by the wraparound mortgage was without consideration, *are also unfounded.*" (Summary Judgment Decision at 7) (emphasis added). Again, the claim has been litigated in State Court and need not be relitigated.

### 5. *The Seventh Cause of Action*

Due to the Debtor's allegations of lack of consideration and the breach of

---

70. The Closing Conveyances are unsupported by, and are therefore void for want of, consideration.
71. By reason of the wrongful acts of Seminole, the Apartment Corporation has suffered damages in an amount which is not presently ascertainable but which, upon information and belief, may exceed $10,000,000.00.
72. By reason of the foregoing, the Apartment Corporation is entitled to a judgment against Seminole (a) canceling the Seminole Mortgage Note, the Seminole Wrap Mortgage, and the Unsold Shares, (b) voiding any obligations, liens or other interests created thereunder or arising or otherwise relating thereto, (c) directing Seminole to account to the Apartment Corporation for all profits received and income earned in connection with the Closing, the Seminole Mortgage Note, the Seminole Wrap Mortgage or the sale of the Equity.
73. The Apartment Corporation lacks an adequate remedy at law.

fiduciary duty by Seminole, the Debtor's seventh cause of action seeks to have the obligations related to the Wrap Mortgage subordinated to the claims of all creditors pursuant to § 510® of the Bankruptcy Code.[17]  In order to succeed on a claim for equitable subordination, the movant must show that: (1) the claimant engaged in some type of inequitable or fraudulent conduct; (2) the misconduct resulted in injury to creditors; and (3) equitable subordination would be consistent with other bankruptcy law.  *In re Mobile Steel Co.*, 563 F.2d 692, 699–700 (5th Cir.1977); *In re Poughkeepsie Hotel Associates Joint Venture*, 132 B.R. 287, 292 (Bankr. S.D.N.Y.1991).  While a claim under § 510(c) of the Bankruptcy Code is unique to bankruptcy, the underlying issue of the conduct of the party involved is not.  Seminole's conduct in relation to the entire cooperative conversion process has been scrutinized by the State Court and found to be valid.  (Summary Judgment Decision at 7–9).  The Debtor's attempt to raise this issue here does not preclude the application of collateral estoppel.  Indeed, case law holds that where the same allegations of misconduct were raised as affirmative defenses and decided against a debtor, the same factual allegations cannot be used in a subsequent proceeding in Bankruptcy Court to subordinate the creditor's claims or otherwise attack the validity of the creditor's lien.  *In re University Drive Professional Complex, Inc.*, 101 B.R. 790, 794 (Bankr.S.D.Fla.1989); *In re Lewison Bros.*, 162 B.R. 974, 992 (Bankr.D.N.J.1993);  *see* Discussion, *supra* at 686.

In *University Drive, supra*, the debtor commenced an adversary proceeding attacking the validity, and thus seeking the subordination, of a mortgage held by FSLIC.  In response, FSLIC argued that the adversary proceeding claims were barred by *res judicata* and collateral estoppel, alleging that the debtor was attempting to reassert allegations of the answer, its affirmative defenses and counterclaims from a state court foreclosure action which had already been determined against the debtor.  *Id.* at 792.  In applying the former adjudication doctrines, the Court determined that the cause of action in both the foreclosure action and the bankruptcy court subordination action were the same because the facts and evidence necessary to maintain the debtor's position in the subordination action were the same as those facts necessary to maintain its position in the foreclosure action.  *Id.* at 793.  As the Court concluded, "[T]he identity of the thing sued for is identical in both the State Court Action [foreclosure action] and the instant proceeding [subordination action].  In the present case, UPDC [the Debtor] attempts relitigation of the same cause of action by using the facts as a sword rather than a shield." *Id.*

The *University Drive* court further addressed the Debtor's argument in the instant case that equitable subordination is peculiar to bankruptcy law and "is a remedy not available outside of the bankruptcy case." (Debtor–Plaintiff's Memorandum Of Law In Opposition To Motion Of Certain Defendants To Dismiss Adversary Proceeding at 43).  As the *University Drive* Court stated:

It is not relevant in determining whether either res judicata and collateral estoppel apply that the State Court action was a foreclosure action wherein the instant Amended Complaint seeks to determine the extent of the claim and the subordination thereof.  In *Simco Operating Corp. v. City Nat'l Bank of Miami Beach*, 341 So.2d 232 (Fla. 3d DCA 1976), cert. denied, 348 So.2d 952 (1977), the court held that a litigant was estopped from filing a complaint alleging fraud in the inducement of purchasing property, where the exact issue was raised by the litigant as a defense to a prior foreclosure action in which the lender foreclosed out the litigant's interest in the property.  *See Hay v. Salisbury*, 92 Fla. 446, 109 So. 617 (1926) (prior action by defendant against plaintiff to quiet title

---

17.  Bankruptcy Code § 510(c) states:

(c) Notwithstanding subsections (a) and (b) of this section, after notice and a hearing, the court may—

(1) under principles of equitable subordination, subordinate for purposes of distribution all or part of an allowed claim to all or part of another allowed claim or all or part of an allowed interest to all or part of another allowed interest; or

(2) order that any lien securing such a subordinated claim be transferred to the estate.

involved the same facts raised by plaintiff against defendant in instant action for specific performance of contract for sale of property. Therefore, plaintiff was barred by res judicata from pursuing the requested relief).

*Id.* at 793.

Similarly, in *Lewison Bros., supra,* the Court determined that a debtor's attempts to attack the validity of a mortgage that was already the subject of a judgment of foreclosure was barred by *res judicata.* In *Lewison Bros.,* the debtor commenced an adversary proceeding seeking to attack the validity of a mortgage on lender liability grounds after the mortgagee had obtained a judgment of foreclosure against the debtor in an action where they had previously raised the same claims as defenses and counterclaims. The mortgagee moved to dismiss the adversary proceeding on the grounds that the doctrines of *res judicata* and collateral estoppel did not permit the relitigation of the issues which had previously been raised by the debtor in the context of the foreclosure action. *Id.* at 978–979. In granting the bank's motion to dismiss, the Court analyzed the claims raised by the debtor in the adversary proceeding and in the foreclosure action and concluded that the causes of action were the same. *Id.* at 988–992. In reaching its conclusion, the *Lewison Bros.* court looked at the similarity of the underlying factual allegations which gave rise to the various claims. *Id.* at 981. As the Court concluded:

> In assessing whether there is an identity of claims, the court will look to the factual predicate of the claims asserted, not the legal theory upon which the plaintiff seeks relief. *Id.* at 988, citing *Eubanks v. FDIC,* 977 F.2d 166, 171 (5th Cir.1992). It is thus the factual circumstances of the relationship between [the bank] and [the debtors] which should be precluded from being relitigated, including all defenses and counterclaims which were not put forth in the original foreclosure action. *See Nilsen v. Moss Point,* 701 F.2d 556, 564 (5th Cir. 1983) (the principal test for comparing causes of action is whether the primary right and duty or wrong are the same in each action); *Cemer v. Marathon Oil Co.,*

583 F.2d 830, 832 (6th Cir.1978) ("a judgment on the merits operates as a bar to the later suit, *even though a different legal theory . . . is advanced in the second suit* ").

*Id.* at 988 (emphasis added).

Similarly, in the instant case, the 1993 Adversary Proceeding is premised upon the identical factual allegations raised by the Debtor in the foreclosure action. Furthermore, in both actions, the Debtor claimed that Seminole engaged in fraudulent conduct. Yet, the Debtor seeks to relitigate this claim in the Bankruptcy Court under a different legal theory and remedy—equitable subordination. However, as the *Lewison Bros.* and the *University Drive* courts concluded, where the same allegations of misconduct were raised in the first action and decided against a debtor, the same factual allegations cannot be used in a subsequent proceeding in Bankruptcy Court to subordinate the creditor's claim.

Thus, this Court finds that this issue, like the fourth cause of action, has also already been decided by the State Court. The State Court concluded that Seminole has not engaged in fraudulent conduct. Specifically, Judge Yoswein held:

> The further contention that the 'contributed capital' section of the balance sheet overstated the shareholders' equity since Seminole, not 9281 [ (the Debtor) ], received the proceeds from the sale of the shares is also misplaced . . . Furthermore, as the court noted earlier, Seminole, as the sole shareholder of 9281 [ (the Debtor) ] prior to conversion, was entitled to the proceeds from the sale of the shares in the corporation. Moreover, the equity section of the balance sheet represents the value assigned to each share of 9281's [ (the Debtor's) ] stock. It does not represent monies paid into the corporation as asserted by the defendant shareholders. Consequently, *having failed to demonstrate any fraudulent activity by Seminole,* there is no need to postpone Seminole's summary judgment motion . . .

(Summary Judgment Decision at 11) (emphasis added).

Accordingly, the Debtor's attempt to raise this issue in pursuit of relief under a different legal theory in the context of an equitable subordination claim does not preclude the application of collateral estoppel. Since this issue has been addressed and determined by the State Court, collateral estoppel precludes re-litigating it before this Court. Therefore, this claim should also be barred.[18]

### 6. *The Eighth Cause of Action*

The Debtor's eighth cause of action is based on a theory of breach of fiduciary duty. The Goldstick Defendants allege that this claim has been previously litigated in the State Court foreclosure action, as a counter-claim.

In evaluating this counterclaim, the State Court first construed it as one for breach of fiduciary duty and, in the alternative, as one for breach of contract by Seminole. As to the breach of fiduciary duty construction, the State Court found that the Debtor failed to plead specific wrongful acts by Seminole which would constitute an independent tort and that an action for civil conspiracy is not cognizable in law. (Summary Judgment Decision at 8). As to the breach of contract construction, the State Court found that the Debtor "had full knowledge of the details concerning the wraparound mortgage ... as disclosed in the offering plan."[19] (Summary Judgment Decision at 9). Therefore, Debtor failed to state a claim for breach of contract. Accordingly, the State Court determined that the third counterclaim, regardless of the legal theory, must be dismissed.

Thus, the State Court gave several explicit reasons for its conclusion that there was no breach of fiduciary duty or breach of contract by the Goldstick Defendants. (Summary Judgment Decision at 7–9). In addition, it found the following salient facts pertinent to Goldstick Defendants' motion to dismiss the eighth cause of action. First, the Court concluded that the transaction at issue, the execution of a Wrap Mortgage in connection with a cooperative conversion, was a valid transaction since the consideration for the mortgage was the property transferred to the apartment corporation. (Summary Judgment Decision at 7). This finding was the main reason for granting Seminole's motion for summary judgment. *See* Discussion, *supra* at 681–682. Therefore, it follows that the Goldstick Defendants' participation in this proper business transaction cannot support a claim for breach of fiduciary duty. Second, the State Court found that the Debtor had full knowledge of the terms of the Wrap Mortgage and the rights of the holders of unsold shares, as Seminole had disclosed this information in its Offering Plan. (Summary Judgment Decision at 7–9). In essence, the State Court recognized that none of these circumstances could support a claim of breach of fiduciary duty or breach of contract. (Summary Judgment Decision at 8–9).

The Court will now consider the motion to dismiss Plaintiff's eighth cause of action on the grounds that it is barred under the doctrine of collateral estoppel. Unlike *res judicata*,[20] collateral estoppel may be invoked as long as the entity or individual

---

18. This Court need not address the Seminole Defendants' motion to dismiss these claims under the doctrine of *res judicata* or for failure to state a cause of action pursuant to § 544(b) of the Bankruptcy Code since the Court has concluded that the claims are barred and, consequently, dismissed pursuant to the doctrine of collateral estoppel.

19. The offering Plan states in pertinent part:

Prior to the closing and until the first meeting of the shareholders of the Apartment Corporation, members of [the Goldstick] firm will be the sole officers and directors of the Apartment Corporation and therefore will act on its behalf at the closing. The interests of the Sponsor and the Apartment Corporation are not identical and they may, at times, conflict....

(Notice of Motion of Defendants Goldstick and Barr, Exh. F).

20. *Res Judicata* requires that the prior decision have the following elements: 1) a final judgment on the merits; 2) by a court of competent jurisdiction; 3) in a case involving the same parties or their privies; and 4) involving the same cause of action. *Herendeen v. Champion Int'l Corp.*, 525 F.2d 130, 133 (2nd Cir.1975). In applying these required elements to the case at bar, it is clear that the Goldstick Defendants cannot meet the third condition which requires "the same parties or their privies." The Goldstick Defendants were not named parties to the State Court foreclosure action and the inclusion of the Goldstick Defendants within the Debtor's third counterclaim is not, alone, enough to qualify as parties. *See* 73 N.Y. Jur 2d § 397.

against whom the doctrine is sought to be applied was a party or in privity with the party in the prior action and the same issue was decided against that party in the prior action. *Conte*, 996 F.2d at 1400. In the instant case, collateral estoppel is sought to be applied against the Debtor, who was the very same party in the prior State Court action.

The Goldstick Defendants argue that the eighth cause of action [21] in the 1993 Adversary Proceeding is identical to the third counterclaim [22] in the State Court foreclosure action which was dismissed by summary judgment. A comparison of the claims quickly reveals that the claims, even the language, are for practical purposes the same. Therefore, the Court finds that this aspect of the *Conte* test has been met.

Next, the Goldstick Defendants must demonstrate that the issue was "necessarily decided" by the State Court. *Conte*, 996 F.2d at 1400. In granting Seminole's motion for summary judgment, Judge Yoswein concluded that: 1) the Wrap Mortgage was a valid transaction; 2) the Debtor had full knowledge of the terms of this mortgage; and 3) the Debtor had full knowledge of the Goldstick Defendants' participation in the co-operative conversion as attorneys and directors for the Debtor. These findings by the State Court clearly indicate to this Court that the issue of breach of fiduciary duty, as alleged

in the 1993 Adversary Proceeding, was necessarily decided in favor of the Goldstick Defendants.

The second part of the *Conte* test requires the party seeking to avoid the application of collateral estoppel to demonstrate that it did not have a "full and fair opportunity" to litigate the issue. *Conte*, 996 F.2d at 1401. The Debtor submitted affidavits, and an answer containing affirmative defenses and counterclaims to the State Court and then to the Appellate Division. Yet the State Court and the Appellate Division determined that the Debtor's counterclaims, as alleged, did not give rise to a claim for breach of fiduciary duty against the Goldstick Defendants. Therefore, the Debtor had a "full and fair opportunity" to litigate its claim for breach of fiduciary duty. *See* Discussion, *supra* at 685.

### B. *THE 1995 ADVERSARY PROCEEDING*

The instant 1995 Adversary Proceeding was originally commenced in State Court because that was the only available forum following the dismissal of the Debtor's chapter 11 petition. The complaint includes claims seeking to compel a turnover of property of the estate pursuant to 11 U.S.C. § 542 and to avoid transfers of money and property of the estate pursuant to 11 U.S.C. § 544. (*See* Debtor–Plaintiff's Memorandum of Law at 7).

---

**21.** *Compare* the Complaint ¶¶ 46–48 of the 1993 Adversary Proceeding with the third counterclaim ¶¶ 76–78 in the State Court action. The eighth cause of action in the 1993 Adversary Proceeding Complaint ¶¶ 46–48 states:

> 46. [a]s officers and directors of [the Debtor], the Goldstick Defendants owed [the Debtor] the fiduciary duties of loyalty and due care. Notwithstanding their fiduciary duties, some or all of the Goldstick Defendants also represented the interests of Seminole as well as [the Debtor's] in its transactions with [the Debtor] which resulted in the Closing Conveyances.
> 47. By permitting, encouraging, facilitating and authorizing [the Debtor] to enter into and consummate the Closing Conveyances, the Goldstick Defendants breached their fiduciary duties of due care and loyalty to [the Debtor].
> 48. By reason of the forgoing, [the Debtor] has suffered damages in a sum which is not readily ascertainable but which, upon information and belief, may exceed $10 million.

**22.** The third counterclaim in the State Court action ¶¶ 76–78 states:

> 76. Upon information and belief, the members of the Goldstick Group [the Goldstick Defendants] conspired and agreed with members of the Seminole group to divert the assets of [the Debtor] to the use and benefit of Seminole.
> 77. In furtherance of this conspiracy and agreement, and notwithstanding their fiduciary duties, some or all of the Goldstick Group also represented the interests of Seminole to the detriment of [the Debtor] in Seminole's transactions with the Apartment Corporation which resulted in the Closing Conveyances.
> 78. By permitting, encouraging, facilitating and authorizing the Apartment Corporation to enter into and consummate the Closing Conveyances, Seminole caused the members of the Goldstick Group to breach their fiduciary duties of due care and loyalty to [the Debtor] and to assist Seminole in its efforts to divert assets from [the Debtor] to itself.

The complaint in the 1995 Adversary Proceeding also sets forth thirteen causes of action against Seminole, Sanford Sirulnick, Ditmas, Goldstick, Barr, and Wiener. It contains various causes of action under theories of fraud, breach of contract, breach of fiduciary responsibility, self-dealing, embezzlement, and negligence. These allegations are aimed at the defendants, both individually and as directors and officers of the Debtor.

## THE 1995 ADVERSARY PROCEEDING DEFENDANTS' ARGUMENTS

The 1995 Adversary Proceeding Defendants assert that the removal of the Fraud Action is improper on both procedural and substantive grounds pursuant to 28 U.S.C. §§ 1452(b) and Fed. R. Bankr.P. 9027. In sum, they request that the Fraud Action be remanded to the State Court and that the 1995 Adversary Proceeding be dismissed. (*See* Notice of Motion of Seminole and Ditmas at 5).

Specifically, they contend that the Debtor's removal application fails to meet various procedural requirements under Fed. R. Bankr.P. 9027(a)(1).[23] For example, the 1995 Adversary Proceeding Defendants argue that the Debtor's Application for Removal is procedurally defective insofar as it contains no statement of facts evidencing the Debtor's entitlement to the removal of the Fraud Action to the Bankruptcy Court. In addition, they allege that all the State Court pleadings were not included, as required, with the Debtor's application.

The 1995 Adversary Proceeding Defendants further contend that pursuant to 28 U.S.C. § 1452(b),[24] the Bankruptcy Court is to evaluate the various equitable considerations in determining whether remand is appropriate. They argue that all the claims by the Debtor constituting fraud, breach of contract, breach of fiduciary responsibility, self-dealing, embezzlement, and negligence only involve issues of state law. In addition, they contend that the Fraud Action is not a core proceeding. Therefore, the 1995 Adversary Proceeding Defendants maintain that the Bankruptcy Court is unable to enter a final judgment or order without the consent of the parties and the Defendants will not consent to such an order. Consequently, the Fraud Action should be remanded to the State Court.

In the alternative, Seminole and Ditmas request that, pursuant to 28 U.S.C. §§ 1334(c)(1) and (c)(2),[25] the Bankruptcy Court abstain from hearing the 1995 Adversary Proceeding on the grounds that the Bankruptcy Court must abstain from hearing the Fraud Action pursuant to the doctrine of mandatory abstention, or that the Bankruptcy Court must exercise discretionary abstention and abstain from hearing the Fraud Action. (*See* Notice of Motion of Seminole and Ditmas at 5–6).

Under the doctrine of mandatory abstention, pursuant to 28 U.S.C. § 1334(c)(2), there are six criteria to be considered: (1) a

---

**23.** Bankruptcy Rule 9027(a)(1) provides:

A notice of removal shall be filed with the clerk for the district and division within which is located the state or federal court where the civil action is pending. The notice shall be signed pursuant to Rule 9011 and contain a short and plain statement of the facts which entitle the party filing the notice to remove, contain a statement that upon removal of the claim or cause of action the proceeding is core or non-core and, if non-core, that the party filing the notice does or does not consent to entry of final orders or judgments by the bankruptcy judge and be accompanied by a copy of all process and pleadings.

**24.** 28 U.S.C. § 1452(b) states in pertinent part: "[t]he court to which such claim or cause of action is removed may remand such claim or cause of action on any equitable ground."

**25.** 28 U.S.C. §§ 1334(c)(1) and (c)(2) state in pertinent part:

(c) (1) Nothing in this section prevents the district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11. (c) (2) Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 not arising under title 11 or arising gin a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced and can be timely adjudicated, in a State forum appropriate jurisdiction.

timely abstention motion is made; (2) the proceeding must be based on a state law claim or cause of action; (3) there is no independent federal jurisdictional basis; (4) the claim is "related to," but not "arising in" or "arising under" title 11 of the United States Code; (5) a parallel action was commenced in the State Court; and (6) the ability to timely adjudicate the State Court Action.

Seminole asserts that each of the six criteria has been satisfied in the case at bar and, therefore, the Bankruptcy Court must abstain from hearing the Fraud Action. First, the motion for remand was made shortly after the Application for Removal. Second, Seminole asserts that the claims made in the Fraud Action involve solely issues of state law. Third, the claims at bar do not invoke federal question jurisdiction or diversity jurisdiction and therefore could not have been commenced in federal court absent the Bankruptcy Court's jurisdiction. Fourth, the proceeding is not a core proceeding "arising in" or "arising under" title 11. Fifth, the proceeding already has been commenced and is pending in the State Court. Last, the State Court is the forum to adjudicate these claims since the Bankruptcy Court is incapable of rendering a final judgment as a result of its "related to" jurisdiction.

In the alternative, Seminole and Ditmas request this Court to exercise discretionary abstention. Under the doctrine of discretionary abstention, the Bankruptcy Court has the ability to abstain from hearing a particular proceeding where federal bankruptcy objectives would properly be served by the Bankruptcy Court conceding its jurisdiction but abstaining pursuant to 28 U.S.C. § 1334(c)(1).

### THE DEBTOR'S ARGUMENTS

The Debtor asserts that this 1995 Adversary Proceeding was removed to this Court in order to unify issues and claims which had been separated following the dismissal of the bankruptcy petition by Bankruptcy Judge Ryan. Therefore, the Debtor contends that removal was appropriate to consolidate the claims before the Bankruptcy Court rather than divide the Debtor's litigation efforts into two different forums. In response to the 1995 Adversary Proceeding Defendants' contentions, the Debtor argues that: 1) this adversary proceeding was properly removed from the State Court; 2) the Bankruptcy Court has jurisdiction since the claims are core, making abstention impermissible; and 3) there are no equitable grounds which warrant remand.

First, the Debtor contends that the 1995 Adversary Proceeding was properly removed from the State Court. The Debtor filed its Notice of Removal within 90 days of the District Court's order reinstating the petition. Prior to that date such notice could not have been filed because there was no pending bankruptcy case to which the action could have been removed. In addition, the Debtor argues that the necessary pleadings, the Supplemental Summons and the Amended Verified Complaint, were attached to the Removal Application. Rule 7(a) of the Federal Rules of Civil Procedure, made applicable by Bankruptcy Rule 7007, defines the term "pleadings" to include a complaint, an answer, a reply to a counterclaim, an answer to a cross-claim, and a third-party complaint. Therefore, the pleadings that existed at the time of removal were attached. The Debtor further alleges that the Removal Application contained an adequate description of its jurisdiction basis as required by Bankruptcy Rule 9027.

Second, the Debtor alleges that the Bankruptcy Court has jurisdiction since the claims are core, making abstention impermissible. The Debtor contends that all proceedings "arising under," "arising in," or "related to" a case under title 11 confers jurisdiction to the Court to hear this controversy. The Debtor asserts that the claims in the present adversary proceeding satisfy this test in that: 1) this litigation involves the determination of the rights and property interests of the Debtor and the defendants in property of the estate; 2) the proceeds of this litigation would be assets of the Chapter 11 estate; and 3) the outcome of this adversary proceeding, and the closely intertwined 1993 Adversary Proceeding, may dictate the success or failure of the reorganization. (Debtor–Plaintiff's Memorandum Of Law In Opposi-

tion To Motion Of Defendants To Remand Adversary Proceeding Or, In The Alternative, For Abstention at 28).

Finally, the Debtor asserts that equitable considerations do not warrant abstention. Remanding the 1995 Adversary Proceeding to the State Court would require that the parties litigate related claims in two different forums. In addition, the Debtor alleges that it would not be more expedient for the State Court to hear the 1995 Adversary Proceeding.

### THE 1995 ADVERSARY PROCEEDING DEFENDANTS' MOTION TO REMAND IS PROPERLY BEFORE THE COURT

■■■ In evaluating a motion to remand pursuant to 28 U.S.C. § 1452(b), the Court must first determine whether the action was properly removed. *See Montague Pipeline Technologies Corp. v. Grace/Lansing*, 209 B.R. 295, 298 (Bankr.E.D.N.Y.1997). Removal is governed by 28 U.S.C. § 1452(a) which states, in pertinent part, "[a] party may remove any claim or cause of action in a civil action . . . to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under section 1334. . . ." 28 U.S.C. § 1452(a). Section 1334(a) grants federal district courts "original and exclusive jurisdiction of all cases under title 11" and § 1334(b) grants courts original but not exclusive jurisdiction of "all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. §§ 1334(a) and (b).[26]

The claims of the 1995 Adversary Proceeding Defendants do not meet the standard of "arising under title 11" because the claims are not predicated on a right created or determined by title 11. *Wood v. Wood (In re Wood)*, 825 F.2d 90, 96 (5th Cir.1987). In addition, the claims do not meet the standard

of "arising in" title 11, because the claims are certainly not unique to or found only in bankruptcy proceedings. *See Wood*, 825 F.2d at 96–97. Instead, it appears that the claims of the 1995 Adversary Proceeding are only "related to" the Debtor's title 11 bankruptcy case since the claims are based upon state law and the claims "could conceivably have an effect" on the administration of the bankruptcy estate. *See Drexel Burnham Lambert Group, Inc. v. Vigilant Ins. Co.*, 130 B.R. 405, 407 (S.D.N.Y.1991) (the Bankruptcy Court remanded a removed State Court action brought by the Debtor for breach of contract and declaration of insurance coverage).

■■■ Based upon the jurisdictional grant over claims "related to" a chapter 11 case within 28 U.S.C. §§ 1334 and 157(a), this Court has jurisdiction over the removed Fraud Action.[27] However, this Court need not make a determination as to whether or not the claims are core or non-core since such a distinction does not affect this Court's ability to exercise jurisdiction over the instant motion to remand. *See Montague*, 209 B.R. at 299; *Lipshie v. AM Cable TV Indus.*, 110 B.R. 638, 644 (Bankr.E.D.N.Y.1990); *St. Vincent's Hosp. v. Norrell (In re Norrell)*, 198 B.R. 987, 994 n. 5 (Bankr.N.D.Ala.1996). In other words, where claims are based on state law, both core and non-core matters are subject to an initial remand inquiry. *In re Norrell*, 198 B.R. at 994 n. 5.

Due to the foregoing reasons, this Court may consider the 1995 Adversary Proceeding Defendants' motion to remand.

### THE APPLICATION OF 28 U.S.C. § 1452(b) TO 1995 ADVERSARY PROCEEDING DEFENDANTS' MOTION TO REMAND

■■■ The Court will first consider the 1995 Adversary Proceeding Defendants' mo-

---

26. The jurisdictional grant in 28 U.S.C. § 1334 is applicable to the Bankruptcy Court through 28 U.S.C. § 157(a), which provides that the District Court can refer the jurisdiction granted to it by 28 U.S.C. § 1334 to the Bankruptcy Court. A standing order of reference in the Eastern District of New York refers all such matters to the Bankruptcy Judges within this District. *See* "Standing Order of Referral of Cases to Bankruptcy Judges for the Eastern District of New York" dated August 28, 1986 (Weinstein, C.J.).

27. Generally, claims which are "related to" a case under title 11 are considered "non-core." *Nemsa Establishment, S.A. v. Viral Testing Sys. Corp.*, No. 95 Civ. 0277(LAP), 1995 WL 489711, at *2 (S.D.N.Y.1995). A Bankruptcy Court may hear, but not finally determine, such non-core matters unless the parties consent to a final determination. *See* 28 U.S.C. § 157(c)(2).

tions to remand pursuant to 28 U.S.C. § 1452(b). Thereafter, the Court will consider Seminole and Ditmas Defendants' request that the Court abstain from hearing the 1995 Adversary Proceeding pursuant to 28 U.S.C. §§ 1334(c)(1) and 1334(c)(2).[28]

As previously stated, 28 U.S.C. § 1452(b) provides that the court may remand "on any equitable ground." 28 U.S.C. § 1452(b). The standard employed by courts in the Second Circuit for determining whether to grant a request for remand on equitable grounds under § 1452(b) was stated in *Drexel*, 130 B.R. at 407. In *Drexel*, the Court considered the following seven factors:

> (1) the effect on the efficient administration of the bankruptcy estate; (2) the extent to which issues of state law predominate; (3) the difficulty or unsettled nature of the applicable state law; (4) comity; (5) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case; (6) the existence of the right to a jury trial; and (7) prejudice to the involuntarily removed defendants.

*Id.* at 407 (citations omitted); *see also In re 183 Lorraine St. Assoc.*, 198 B.R. 16, 32 (E.D.N.Y.1996) (using the *Drexel* factors to evaluate remand). In evaluating the *Drexel* factors, the Court will only address those deemed to be pertinent to the instant case. As detailed below, application of the *Drexel* factors requires this Court to grant the 1995 Adversary Proceeding Defendants' motion to remand on equitable grounds.

Analysis of the first *Drexel* factor reveals that remand of the 1995 Adversary Proceeding will aid in the efficient administration of the bankruptcy estate. *Drexel*, 130 B.R. at 408. Significantly, the state law claims presented by the 1995 Adversary Proceeding do not require any "special expertise" of the Bankruptcy Court. Indeed, the expertise of the State Court would certainly effect a more efficient estate administration since state court judges are very familiar with the New York law which addresses claims such as breach of fiduciary duty and fraud. *Cf. In re Craft Architectural Metals Corp.*, 115 B.R. 423, 431 (E.D.N.Y.1989) (invoking discretionary abstention due to the Bankruptcy Court's own crowded docket and lack of expertise as reasons for not hearing State Court action). In the instant case, it is undisputed that State Court Judge Yoswein was familiar with the issues involved in the removed 1995 Adversary Proceeding.[29]

The second *Drexel* factor requires the Court to examine the extent to which issues of state law predominate in the removed action. *Drexel*, 130 B.R. at 407. Since the Debtor's claims, such as breach of fiduciary duty, are not governed by federal law, it is clear that state law necessarily predominates in the removed action. Therefore, this factor also favors remand to the State Court.

The third and fourth *Drexel* factors also favor remand. Even though the instant case does not involve unsettled issues of state law, the lack of controversy is not a justification for this Court to hear this removed action. *See Montague*, 209 B.R. at 295, 301. It is well settled that comity considerations dictate that "federal courts should be hesitant to exercise jurisdiction when 'state issues substantially predominate'." *See Citibank v. White Motor Corp.*, 761 F.2d 270, 274 (6th Cir.1985) (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139,

---

**28.** The 1995 Adversary Proceeding Defendants argue that the procedural aspects of removal, pursuant to Fed. R. Bankr.R. 9027, provide an additional basis to grant their motion for remand to State Court. *See* Discussion, *supra* at 693. The Court need not determine the validity of these procedural arguments since 28 U.S.C. § 1452(b) provides a substantive basis for remand to State Court.

**29.** As one of the Defendants' attorney stated at the February 4, 1997 hearing:

> Before the removal of the State Court action to this Court we not only had submitted a motion to dismiss the '95 Action to Justice Yoswein in

Supreme Court, Kings County, but we had oral argument on that motion. And Judge Yoswein indicated to all parties that he was familiar with all of the issues having handled not only the State Court foreclosure action, but there were other actions as well that I was not involved in. The Judge said he had a whole room of boxes and documents dealing with all the 9281 Shore Road cases, and that he would promptly decide this motion.

Well, I would say about a month after that oral argument was when the plaintiff removed the action to this Court.

(Tr. 2/4/97 at 9).

16 L.Ed.2d 218 (1966)). Accordingly, comity considerations also favor remand.

The prejudice suffered by the 1995 Adversary Proceeding Defendants due to this involuntary removal is apparent and would escalate if the Bankruptcy Court retained this action. When the Fraud Action was removed, the 1995 Adversary Proceeding Defendants had already moved to dismiss the action in State Court. (*See* Plaintiff's Memorandum in Opposition at 9). Therefore, the 1995 Adversary Proceeding Defendants would be forced to move in Bankruptcy Court to dismiss the [1995] Complaint yet again. Significantly, the 1995 Adversary Proceeding Defendants indicate, in their memorandum of law, that the parties have already conducted oral argument of the motion to dismiss before Judge Yoswein; at that time, the State Court specifically advised the parties that it was fully familiar with the issues involved. (Tr. 2/4/97 at 9; *see* Reply Memorandum Of Law Of Defendants Sanford Sirulnick, Franklin J. Barr, David Goldstick and Barry Wiener In Support Of Their Motion For An Order Remanding This Proceeding To State Court at 2; Affidavit of Alan M. Goldberg at 5, attached to Notice Of Motion For An Order Remanding The Adversary Proceeding To State Court).

As an alternate ground for relief, Seminole and Ditmas request that this Court either mandatorily abstain pursuant to § 1334(c)(2) or use its discretionary abstention pursuant to § 1334(c)(1) Since the motion to remand is granted on equitable grounds, it is unnecessary for the Court to determine whether or not the 1995 Adversary Proceeding may be remanded on the basis of abstention.[30]

### CONCLUSION

The causes of action that are being presented by the Debtor in this case have already been litigated by the Debtor and are identical to the issues necessarily decided by the State Supreme Court and affirmed by the Appellate Division. Additionally, these very same issues were already fully and fairly litigated and decided in the State Supreme Court and affirmed by the Appellate Division. Accordingly, the Seminole Defendants and the Goldstick Defendants' motion to dismiss is granted because the first, second, third, fourth, fifth, sixth, seventh, and eighth causes of action are barred by the doctrine of collateral estoppel.

The 1995 Adversary Proceeding Defendants' motion to remand is properly before the Court. Due to equitable and comity considerations, this 1995 Adversary Proceeding, based on state law claims, is dismissed and remanded.

IT IS SO ORDERED.

---

**30.** Nevertheless, it is worth noting that this Court would be hesitant to abstain from hearing this action on the basis of 28 U.S.C. §§ 1334(c)(1) and (c)(2) since a number of courts in the Second Circuit have held that abstention does not apply to a removed action where there is no parallel state court action. *See Montague,* 209 B.R. at 295, 304; *Arstk, Inc. v. Audre Recognition Sys., Inc.,* No. 95 Civ. 10519 (LAK), 1996 WL 229883, at *4 (S.D.N.Y.1996); *Neuman v. Goldberg,* 159 B.R. 681, 686 (S.D.N.Y.1993); *Weisman v.*

*Southeast Hotel Properties Ltd. Partnership,* No. 91 Civ. 6232, 1992 WL 131080, at *13 (S.D.N.Y. 1992). In other words, upon filing a proper notice of removal, the parties may no longer proceed in the original court until the action is remanded. Fed. R. Bankr.P. 9027(c). Thus, upon filing a proper notice of removal there is but one action and that is the action which has been removed to the District Court or the Bankruptcy Court.